## Richmond

### ANTHONY LEON HOWIE

### V.

### COMMONWEALTH OF VIRGINIA

Record No. 801523.

October 16, 1981.

Present: All the Justices.

*G. Rodney Sager (Monahan & Sager,* on brief), for appellant.
*Guy W. Horsley, Jr., Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COCHRAN, J., delivered the opinion of the Court.

In this appeal, the question for our determination is whether the trial court, in revoking the probation of Anthony Leon Howie, violated his due process rights under the Fourteenth Amendment to the United States Constitution.

On March 20, 1978, Howie was found guilty of possession of lysergic acid diethylamide (LSD), a felony, and possession of marijuana, a misdemeanor. By order entered May 15, 1978, the trial court suspended imposition of sentence on the felony conviction during Howie's good behavior on condition that he be placed

on supervised probation, and sentenced Howie to serve twelve months in jail on the misdemeanor conviction. Howie was released from jail on November 17, 1978, under the supervision of his probation officer, Donald Schalla. One of the conditions of his probation was that Howie not leave the State without obtaining Schalla's permission.

On April 28, 1980, the trial court entered an order reciting the representations of the Commonwealth's Attorney that Howie "left the state without his probation officer's permission, associated with persons engaged in drug traffic and ha[d] been arrested in Massachusetts on drug charges" and requiring Howie to appear and show cause why the suspension of imposition of sentence should not be revoked. In the evidentiary hearing conducted by the trial court on May 23, 1980, pursuant to the show cause order, Howie was represented by counsel whom he had employed.

Two witnesses testified for the Commonwealth. Officer John J. Cox, of the Richmond Police Department, testified that Howie was arrested in Massachusetts on drug charges on August 8, 1979, after Howie, his brothers, and his father, before the latter's death, had been under lengthy investigation for suspected drug-related activities. Howie was staying in his deceased father's house in Massachusetts when law enforcement officers raided the dwelling and arrested everyone present, including Howie. Cox went to Massachusetts on April 24, 1980, and brought Howie back to Richmond after Howie had executed a Waiver of Interstate Rendition Proceedings. Howie told Cox that he had gone to Massachusetts for the reading of his father's will.

Schalla testified that Howie had signed the standard probation form containing the condition that he could not leave the area without the permission of his probation officer, and that the condition was explained to him. On August 8, 1979, Schalla first learned that Howie had left the State when Officer Cox telephoned him that Howie had been arrested in Massachusetts on drug charges. Schalla had never had any communication from Howie since that date, but he had received two telephone calls from Howie's mother. Schalla conceded that in an emergency, such as a death or serious illness in the family, he would grant permission for a probationer to leave the State. He would not consider the reading of a will, however, to constitute an emergency justifying the granting of such permission. Schalla acknowledged

that Howie had been a cooperative probationer until his unauthorized departure from the State.

Howie's mother, Helen Elizabeth Howie, testifying for her son, said he had been telling her "off and on" after his father's death in June of 1979 that he "had to go" to Massachusetts for the reading of his father's will. When Howie found it necessary to leave on a weekend for that purpose he asked her to inform his probation officer, and she tried without success to do so. After she heard from her son that he had been arrested in Massachusetts, she reported this information to Schalla by telephone, but Schalla told her that he already knew about the arrest.

Howie testified in his own defense. He said that he was called on a Friday evening at 6:00 p.m. to come to Massachusetts for the reading of his father's will. He telephoned Schalla's office, but it was closed, so he asked his mother to call for him on the following Monday, because he knew that he was required to notify the probation officer. Upon arriving in Massachusetts, Howie stayed in his deceased father's house for four days until he and the other occupants, seven in all, were arrested on drug charges on August 8, 1979. Drugs were found in the house but not on Howie's person. Howie was confined in jail until December 20, 1979, when he was released on bond. The charges were still pending, and he understood from his mother that Schalla expected to hear from him only after the Massachusetts case was concluded. He telephoned Schalla's office twice in October but was unable to talk to him because the probation officer was on vacation.

A letter was introduced into evidence to corroborate Howie's testimony that he was called to Massachusetts for the reading of his father's will. This letter, signed by an attorney, stated that it had been the attorney's "desire" that Howie come to Haverhill, Massachusetts, "some time around the time of August 6, 1979, for the purpose of [his] father's estate". Howie said that the reading of the will had been postponed from the scheduled date because his brother was working and "could not get off" and that the will had not yet been read because of "the disturbance".

During the course of the hearing, the trial judge, without objection, questioned Howie and his mother about an incident relative to the misdemeanor jail sentence imposed upon Howie. The judge asked if either was aware that Howie's father had tried to get him released early so that he could return to Massachusetts. Each denied any knowledge of this incident.

At the conclusion of the evidence, the Commonwealth's Attorney argued that Howie had acted irresponsibly in leaving the jurisdiction without getting permission from his probation officer, without ever personally communicating with the officer, and without verifying the information allegedly received from his mother that he was not expected to communicate with Schalla until the Massachusetts case was disposed of. Howie's counsel urged that Howie had only "technically" violated the rule prohibiting him from leaving the State, that in other respects he had cooperated fully with his probation officer, that his record showed only the one felony conviction, and that his probation should not be revoked unless he was convicted of the charges pending in Massachusetts.

The trial court revoked the suspended sentence, sentenced Howie to serve ten years in the penitentiary, and suspended four years upon condition that he keep the peace and be of good behavior for twenty years. The court denied Howie's motion to suspend execution of the penitentiary sentence pending disposition of the charges against him in Massachusetts. In the final order entered May 23, 1980, the court recited that the hearing was conducted pursuant to the show cause order previously entered, and that the suspended imposition of sentence was revoked "for reasons satisfactory to the Court".

On brief, Howie contended that he was denied due process on these four grounds: (1) He was not afforded a preliminary hearing at the time of his arrest and detention; (2) he was denied the right to confront and cross-examine adverse witnesses; (3) he was denied the right to a hearing before a neutral and detached hearing officer; and (4) he was not furnished a written statement by the fact finder as to the evidence relied on and the reasons for revoking his probation.

Howie relies upon *Morrissey v. Brewer*, 408 U.S. 471 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). In *Morrissey*, the Supreme Court reviewed a revocation of parole by the Iowa Board of Parole and prescribed certain minimum due process requirements for parole revocation proceedings. The Court held that after the parolee's arrest, the determination that reasonable cause exists for revocation should be made by some independent official other than the parole officer who reported the parole violations or recommended revocation. *Id.* at 486. The hearing officer, after notice has been given of the violation charged, shall determine whether

there is probable cause to hold the parolee for a revocation hearing. *Id.* at 487. Upon a finding of probable cause, the Court stated that minimum due process requirements included the following:

> (a) Written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revoking parole.

*Id.* at 489.*

In *Gagnon,* the Court held that a probationer, like a parolee, is entitled to a preliminary and final revocation hearing under the conditions specified in *Morrissey.* 411 U.S. at 782.

The discussion in *Morrissey* and *Gagnon* of due process requirements in terms of administrative law recognized that revocations of parole and probation are frequently determined by nonjudicial personnel in informal proceedings. These decisions imply that a judicial hearing to determine revocation inherently affords more than the minimum requirements of due process. In light of these decisions, however, we will review the record in this case to ascertain whether the judicial proceedings satisfied due process under the *Morrissey* guidelines.

The show cause order, a copy of which was personally served on Howie, informed him fully of his alleged probation violations. The order also gave him notice of the time and place of the evidentiary hearing to be conducted before the trial court. At the hearing, he appeared with his attorney, presented evidence and confronted and cross-examined adverse witnesses.

The purpose of the preliminary hearing is to determine whether there is probable cause to detain the parolee or probationer in custody prior to the revocation hearing. However, as Howie's counsel conceded in oral argument before us, any error in

---

* The provisions for preliminary probable cause hearings by hearing officers and revocation hearings by the Virginia Parole Board are set forth in Code § 53-272 (Repl. Vol. 1978).

failing to accord him a preliminary hearing was harmless. The absence of a preliminary hearing to determine temporary detention is irrelevant after a full evidentiary hearing has been conducted to determine whether probation or parole should be revoked. *See Gerstein* v. *Pugh,* 420 U.S. 103 (1975); *Collins* v. *Turner,* 599 F.2d 657 (5th Cir. 1979); *United States* v. *Companion,* 545 F.2d 308 (2d Cir. 1976); *State* v. *Morales,* 120 N.J. Super. 197, 293 A.2d 672, *cert. denied,* 62 N.J. 77, 299 A.2d 75 (1972). Moreover, no preliminary hearing is necessary when a probationer or parolee is convicted of another crime. *See Russell* v. *Cooper,* 211 S.E.2d 655 (S.C. 1975).

▇▇ There is no merit to Howie's contentions that he was denied the right to confront and cross-examine adverse witnesses and that he was denied the right to a hearing before a neutral and detached hearing officer. The basis of Howie's argument is that in questioning Howie and his mother about an unrelated incident the trial judge became an adverse witness not subject to cross-examination and that by his questioning he exhibited bias and prejudice against Howie, as further shown by the severity of the sentence imposed. Nothing in the record supports Howie's contention that the trial judge was biased or prejudiced against him. It appears from the judge's questions that he sought to probe further into Howie's motives for going to Massachusetts, but whatever may have been the judge's purpose, the negative responses of Howie and his mother effectively terminated this inquiry. By questioning the witnesses, the judge did not become a witness, adverse or otherwise. And his suspension of four of the ten years of the prison sentence suggests the absence rather than the presence of any bias or prejudice against Howie.

▇▇ It is true, as Howie asserts, that he was not furnished a written statement of the evidence relied on by the court and the reasons for revoking his probation. Although this requirement may be primarily for the guidance of an administrative agency or other authority functioning in a less structured manner than a court, it has been construed to apply also in court proceedings. Where the record shows that a probationer was informed of the reason for revocation and that there was an evidentiary basis for the decision, there was substantial compliance with the requirement even if no explicit written statement was furnished him. *See Sincup* v. *Blackwell,* 608 S.W.2d 389 (Mo. 1980); *Fay* v. *Commonwealth,* 399 N.E.2d 11 (Mass. 1980); *State* v. *Delp,* 614

S.W.2d 395 (Tenn. Cr. App. 1980); *Carter v. State,* 389 So.2d 601 (Ala. Cr. App. 1980).

We acknowledge that it always will be preferable, and often will be necessary, for a trial court to include in an order of revocation a recitation of the evidentiary basis and reasons for the ruling. Howie knew what probation violations were charged against him, however, and he admitted that he had violated the condition that he not leave the area without the permission of his probation officer. At trial, he presented evidence in mitigation of his violation. He must necessarily have been aware of the evidence upon which the trial court relied, for all the evidence showed that Howie left the State without Schalla's permission. It is equally clear that the reason for the revocation of his probation was this unexcused and unsatisfactorily explained violation of probation. Under these circumstances, any error of the trial court in failing to delineate in the revocation order or elsewhere evidence that was uncontradicted and reasons that were obvious could only be harmless.

We will affirm the judgment of the trial court.

*Affirmed.*