COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Russell and AtLee
Argued at Fredericksburg, Virginia


MALL AMUSEMENTS, LLC,
  d/b/a KING PINZ
                                                        OPINION BY
v.      Record No. 1893-15-4              JUDGE RANDOLPH A. BEALES
                                                     SEPTEMBER 13, 2016
VIRGINIA DEPARTMENT OF
  ALCOHOLIC BEVERAGE CONTROL


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace B. Carroll, Judge

Jason C. Greaves (T. Wayne Biggs; Dycio & Biggs, on brief), for
appellant.

Kristina Perry Alexander, Senior Assistant Attorney General Section
Chief (Mark R. Herring, Attorney General; John W. Daniel, II,
Deputy Attorney General, on brief), for appellee.


Mall Amusements, LLC, doing business as King Pinz ("King Pinz"), appeals an order from

the Circuit Court of Fairfax County affirming the decision of the Virginia Alcoholic Beverage

Control Board ("the Board").  For the following reasons, we affirm the order of the circuit court.

## I.  BACKGROUND

On April 17, 2014, a bartender at King Pinz sold an alcoholic beverage to a person under

twenty-one years old.  As a result, King Pinz was cited for violating Code § 4.1-304 and the

administrative regulations of the Board.

King Pinz participated in a hearing on November 12, 2014 before an administrative

hearing officer from the Virginia Department of Alcoholic Beverage Control ("Virginia ABC").

Special Agent[1] Derrick Kekic ("Kekic") testified that, on April 17, 2014, he went into King Pinz with another special agent and an "underage buyer" working for Virginia ABC ("underage buyer" or "buyer").[2] Kekic proffered a photograph of the underage buyer that was taken before going inside King Pinz. Administrative Hearing Officer Clara Williamson ("Williamson") admitted the photograph into evidence after asking Agent Kekic some additional questions about who took the picture and whether it accurately depicted the underage buyer at that time, despite the fact that King Pinz objected to the foundation for allowing the picture into evidence and then objected to Williamson's clarifying questions.

Kekic testified that, from fifteen to twenty feet away, he observed the buyer sit at the bar at King Pinz and interact with the bartender. He testified that she asked for a Bud Light beer. The bartender asked for her license, and she showed the bartender her actual driver's license. Kekic offered photographs depicting the underage buyer after buying alcohol and of her driver's license. The driver's license was clearly marked as "under twenty-one" and listed her birthdate correctly as 10/23/1996, which made her seventeen years old at the time. Williamson also admitted those photographs into evidence.

The bartender then selected a bottle of Bud Light, opened it, and put it in front of the underage buyer. Once the bottle was placed in front of her, Kekic approached, retrieved the bottle, and walked over to the manager. The manager told Kekic that the buyer had looked young, but he did not worry about it when he observed the bartender look at her driver's license. The bartender then came over to the manager and Kekic, and Kekic asked her "if she knew what

---

[1] "'Special agent' means an employee of the Department of Alcoholic Beverage Control whom the Board has designated as a law-enforcement officer pursuant to § 4.1-105." Code § 4.1-100.

[2] Because the underage buyer was a minor at the time she was served alcohol, we do not refer to her by name.

the date of birth of the individual that she just sold a Bud Light to [was]." Kekic testified that

she responded, "She [the bartender] stated 1996, and then she stated that she fucked up." The

bartender admitted to Kekic that she had selected an unopened bottle of beer, opened it for the

buyer, and that she heard the seal break when she opened it. Williamson admitted into evidence

pictures of the bottle of beer that the bartender offered to the underage buyer. Kekic also asked

that a certificate of analysis of what was in the bottle be admitted in addition to the photograph of

the bottle. King Pinz objected. Williamson ultimately admitted the certificate of analysis as

Exhibit 5 and considered it in her written decision. Kekic testified that the bartender was

convicted in Loudoun County General District Court of selling alcohol to a person under

twenty-one.

The underage buyer also testified about her recollection of events on April 17, 2014.

Hearing Officer Williamson asked her questions throughout her testimony. See App. at 63-68.

When she had finished her questioning, Williamson said, "Agent Kekic, any questions that you

wish asked?" Kekic then posed questions to Williamson, who in turn posed those questions to

the underage buyer. See App. at 65-68. Agent Kekic asked, "I think she can clarify how many

other sales were made that day. I believe she will remember and there's reasons for that."

Williamson then asked the underage buyer, "Okay. Did you participate in other underage buyer

operations that same day?" The underage buyer responded, "Yes, ma'am." In response to

another request from Agent Kekic, Williamson asked, "Is this the first time you had ever

purchased alcohol through . . . the ABC program?" The underage buyer, talking over

Williamson, responded, "Yes. This is my first time that – yeah." Finally, as part of this same

questioning, the following exchange also took place:

> *Kekic*: If you could clarify also from her when she speaks of the
> bartender looking at it for a minute, that she literally means 60
> seconds or a point of time.

> *Williamson*: Okay. You said a minute and, of course, 60 seconds –
> *Kekic*: I don't – I'm wondering if she – she believes it to be an actual minute or a point of time.
> *Underage Buyer*: It was longer than 30 seconds. It wasn't –
> *Williamson*: Between 30 –
> *Underage Buyer*: It was close to a minute, yeah.
> *Williamson*: Okay. You're saying it was between 30 and 60 seconds?
> *Underage Buyer*: Yeah. It wasn't an actual 60 seconds, but it wasn't for a short period of time either.

King Pinz's attorney objected and stated that Williamson was acting beyond her authority and acting as a prosecutor in her questioning. Williamson responded, "I do have a responsibility under those same sections to accurately develop the record, the hearing record." Williamson also told King Pinz's counsel:

> In terms of my asking – having the agent pose questions that he is requesting that I ask the witness, we're required to do that because agents – it's been determined that the agents cannot directly question the witness, as you know. It's been regarded as the unauthorized practice of law. So our practice in our division is to have the agents pose questions to the hearing officer, the hearing officer may alter the questions, determine relevancy, but the hearing officer would pose those questions to the witnesses as I have done today.

On January 12, 2015, Hearing Officer Williamson issued her written decision suspending King Pinz's license to sell alcoholic beverages for thirty days (or for fifteen days if King Pinz paid a $3500 civil penalty). In those findings, Williamson did not even refer to the fact that this sale was the underage buyer's first underage alcohol purchase.

King Pinz appealed her decision and on May 12, 2015 had a hearing before the Board. King Pinz's counsel again objected to Williamson's "role as that of a prosecutor" because she was developing evidence and "seeking to substantiate the alleged charges." On May 14, 2015, the Board issued a final agency determination adopting the written determination of the hearing officer.

- 4 -

On June 19, 2015 King Pinz appealed the matter to the Fairfax County Circuit Court.

Pertinent to this appeal, counsel argued the following in his brief:

> During the examination of the underage buyer as a witness, the Administrative Hearing Officer proceeded to ask questions which Petitioner objected to as exceeding the role of an administrative law judge, pursuant to 3 VAC 5-10-110 and Va. Code § 2.2-4020. Specifically, the witness testified as to the amount of time the bartender spent looking at her identification, which contradicted prior evidence from the prosecution, and the Administrative Hearing Officer acted as an advocate in attempting to repair the witness's contradictory testimony.

On October 30, 2015, the circuit court held an appeal hearing. The circuit court ruled, "the Court finds that the hearing officer did not exceed their powers and that the Court does rely on Judge Brodie's ruling in the Grind [v. Virginia Department of Alcoholic Beverage Control] case." The circuit court also found that the hearing officer's questions to the witness about a photograph that the witness was proffering as evidence and questions asked on behalf of Kekic did not exceed her power, but even if they did, that error was harmless. In the circuit court's written order, the circuit court affirmed the Board's final decision and dismissed the appeal with prejudice.

## II. ANALYSIS

Appellant asserts the following assignment of error:

> The trial court erred in affirming the ruling of the ABC in Appellant's Administrative Appeal from the Initial Decision of the Administrative Hearing Officer because the formal hearing violated the Appellant's due process rights in that the Administrative Hearing Officer was necessarily and inherently biased or partial in that she acted simultaneously as both the person who elicited or presented evidence on behalf of the ABC and the person who passed judgment on whether that evidence was sufficient to substantiate the charges alleged by Law Enforcement.

Thus, this appeal presents several legal issues for review: first, whether Williamson's questions directed to Agent Kekic exceeded her statutory authority as an administrative hearing officer; second, whether Williamson's questions, asked on behalf of Kekic, exceeded her

authority as a hearing officer; and third, whether such questions, if they exceeded Williamson's authority, were harmful error or were a violation of King Pinz's procedural due process right to a fair and impartial hearing.

### A. Judicial Review of an Agency Decision on Appeal

Judicial review of an agency decision is limited to determining "whether the agency acted in accordance with law," "whether the agency made a procedural error which was not harmless error," and "whether the agency had sufficient evidential support for its findings of fact." Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988) (citing Code § 9-6.14:17, now recodified as Code § 2.2-4027). Furthermore, "[t]he duty of the court with respect to the issues of law shall be to review the agency decision de novo." Code § 2.2-4027.

### B. Due Process Right in Administrative Hearing before the Virginia ABC

King Pinz was entitled to procedural due process in the hearing before the Board because of its property interest in its ABC license. "Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment." Bell v. Burson, 402 U.S. 535, 539 (1971) (citing Sniadach v. Family Finance Corp., 395 U.S. 337 (1969), and Goldberg v. Kelly, 397 U.S. 254 (1970)). These procedural rights guarantee King Pinz timely and adequate notice, the right to present evidence and confront witnesses, the right to assistance of retained counsel, and, at issue here, the right to an impartial decision maker. In fact, when a hearing may affect a property interest, an "impartial decision maker is essential" for due process. Goldberg, 397 U.S. at 270.

> Procedural due process guarantees that a person shall have reasonable notice and opportunity to be heard before any binding order can be made affecting the person's rights to liberty or property. The procedural due process guarantee does not create constitutionally

> protected interests; rather, it provides procedural safeguards against
> government's arbitrary deprivation of certain interests.

McManama v. Plunk, 250 Va. 27, 34, 458 S.E.2d 759, 763 (1995) (internal citations omitted).

Although public officials serving as presiding officers may enjoy a presumption that they have

acted correctly, this presumption "may be overcome by evidence of bias or improper conduct.'"

Hladys v. Commonwealth, 235 Va. 145, 148, 366 S.E.2d 98, 100 (1988).

## C.  November 12, 2014 Administrative Hearing

Appellant contends that the hearing officer was biased and not impartial when "she acted

simultaneously as both the person who elicited or presented evidence on behalf of the ABC and

the person who passed judgment on whether that evidence was sufficient to substantiate the

charges . . . . " Opening Br. at 4.  Appellant points to three particular points at which appellant

argues that the hearing officer showed her bias – when the hearing officer questioned Kekic

about a photograph that was to be admitted into evidence, when the hearing officer asked the

underage buyer questions during her testimony, and when the hearing officer asked questions to

the underage buyer on behalf of Agent Kekic.

## D.  Hearing Officer's Questioning of Kekic and the Buyer

Code §§ 4.1-103 and 4.1-111 authorize the Board to hold and conduct hearings, take

testimony, and promulgate regulations in accordance with the Administrative Process Act

(APA).  In this case, the Board promulgated 3 VAC 5-10-110, which further describes a hearing

officer's duties and responsibilities.  Agency hearing officers are authorized to "rule upon offers

of proof and receive relevant and material evidence" and are authorized to "*examine witnesses*

*and otherwise regulate the course of the hearing*."  3 VAC 5-10-110(B) (emphasis added).[3]

---

[3] Appellant does not raise any arguments regarding the constitutionality of any of the statutes or regulations which permit a hearing officer in Williamson's position to examine witnesses and conduct hearings.

Thus, we hold that Williamson's general questions to Agent Kekic about the photograph and questions to the underage buyer were completely within her authority to examine witnesses and to rule on the relevance and materiality of the evidence.

It is not error for an administrative law judge (here the "hearing officer") to ask questions of witnesses who are testifying any more than it would be for a general district court judge or a circuit court judge to ask questions during proceedings before the court. As our Supreme Court has noted, a trial judge's practice of asking questions

> is common and perfectly permissible. Indeed, there are times when it is his duty to do so. He is not to sit there and see a failure of justice on account of omissions to prove facts plainly within the knowledge of a witness, but the character of his questions should not be such as to disclose bias on his part, or to discredit the truthfulness of the witness. In 16 C.J. section 2100, page 831, it is said: "For the purpose of eliciting evidence which has not otherwise been brought out, it is proper for the judge to put the questions to a witness either on his examination in chief or on his cross-examination, and where anything material has been omitted, it is sometimes his duty to examine a witness."

Mazer v. Commonwealth, 142 Va. 649, 655, 128 S.E. 514, 516 (1925). Williamson gave the witness (Agent Kekic) a chance to properly explain why the photograph that Kekic wanted admitted was, in fact, admissible. And when Williamson asked the underage buyer questions, she was simply acting within her authority to ask questions of a witness in order to better understand what the underage buyer knew about her alcohol purchase on April 17, 2014.

Furthermore, Williamson's questions to Kekic about the photograph of the buyer and the manner in which the hearing officer questioned the underage buyer did not demonstrate bias or partiality as King Pinz suggests. The Supreme Court has addressed a similar issue in Howie v. Commonwealth, 222 Va. 625, 283 S.E.2d 197 (1981). In that case, Howie argued that he "was denied the right to a hearing before a neutral and detached hearing officer" because the trial judge showed "bias" when the trial judge questioned Howie and Howie's mother about an

- 8 -

unrelated incident. The Supreme Court found that nothing in the record supported a conclusion that the trial judge was biased. The Court further found, "By questioning the witnesses, the judge did not become a witness, adverse or otherwise." Id. at 631, 283 S.E.2d at 201. Thus, the fact that the trial judge went beyond the scope of the charged incident to inquire about facts *that did not relate to* the case before the trial court was *not* enough to show bias or impartiality. In this case, Williamson did not even ask questions that were unrelated to the matter before her as the trial judge did in Howie.

### E. Hearing Officer's Questioning on Behalf of Agent Kekic

Appellant argues that Williamson's asking questions for Agent Kekic showed that she was biased against King Pinz. However, the entire exchange on its face disproves that claim. Williamson asked the underage buyer several questions at Agent Kekic's behest, including how long the bartender looked at the underage buyer's driver's license. She also asked, "Did you participate in other underage buyer operations that same day?" "How many – do you recall approximately how many establishments you visited?" "Is this the first time you had ever purchased alcohol through . . . the ABC program?" See supra at 3-4. We hold that the hearing officer's questioning on behalf of Agent Kekic did not violate King Pinz's procedural due process rights because nothing in her questioning demonstrated partiality. Therefore, there is no procedural due process violation (or constitutional error) here.

King Pinz also argues that Williamson exceeded her statutory authority. Assuming without deciding that Williamson's repeating Kekic's questions to the witness exceeded her statutory authority to "regulate and expedite the course of the hearing" under Code § 2.2-4020, we next examine whether the questions and answers constituted more than mere harmless error.[4]

---

[4] This is not to suggest that such actions constituted error. Rather, we simply do not reach the issue because it is unnecessary to do so to resolve the case. See Commonwealth v.

Because the error, if any, was a *statutory* violation, we turn to Code § 8.01-678, which makes "harmless-error review required in *all* cases." Ferguson v. Commonwealth, 240 Va. ix, ix, 396 S.E.2d 675, 675 (1990) (noting in a text parenthetical that "harmless-error review [is] required in all cases"). "No trial is perfect, and error will at times creep in." Parsons v. Commonwealth, 154 Va. 832, 852, 152 S.E. 547, 554 (1930). We apply the statutory standard provided by Code § 8.01-678 to determine whether the non-constitutional error, if any, was harmless. Code § 8.01-678 provides, in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

"Under this standard, a non-constitutional error in a criminal case is harmless '[i]f, when all is said and done, . . . the error did not influence the [factfinder], or had but slight effect.'" Anderson v. Commonwealth, 282 Va. 457, 467, 717 S.E.2d 623, 628 (2011) (quoting Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 458 (2005)).

In considering whether an alleged error was harmless, the error must be considered "in the context of the entire case." Montgomery v. Commonwealth, 56 Va. App. 695, 704, 696 S.E.2d 261, 265 (2010). In this case, the evidence against King Pinz was overwhelming. In fact, counsel for King Pinz conceded as much. At oral argument, counsel was asked, "[A]re the responses that were made by [the underage buyer] in response to only the questions that the hearing officer asked for Agent Kekic, . . . isn't that essentially covered in the rest of the

---

Swann, 290 Va. 194, 196, 776 S.E.2d 265, 267 (2015) ("The doctrine of judicial restraint dictates that we decide cases '"on the best and narrowest grounds available."'" (quoting McGhee v. Commonwealth, 280 Va. 620, 626 n.4, 701 S.E.2d 58, 61 n.4 (2010))).

record?"  Counsel responded, "I would concede that those narrow answers, taken in isolation, *I agree that that's probably not going to affect the outcome . . . .*"  (Emphasis added).

The only information that came out as a result of Agent Kekic and Williamson's "co-questioning" was information about how many other underage sales had been made that day and that when the underage buyer had testified that the bartender looked at her license for approximately "one minute" she meant that the bartender could have been looking at it anywhere from thirty seconds to one minute.  Agent Kekic had already testified that this was the only sale of alcohol that day to the underage buyer, who herself had already testified that the bartender looked at her license for one minute.  Agent Kekic and the underage buyer both testified that the buyer was under twenty-one at the time she purchased alcohol from King Pinz.  Whether the bartender had looked at the license for a full minute or only thirty seconds is inconsequential because the bartender herself came over to Agent Kekic and admitted that she had seen that the buyer's driver's license reflected her year of birth as 1996 and that the bartender should not have served her.  In her written findings, Williamson never even referenced that this sale was the underage buyer's first underage alcohol purchase.  Williamson considered other evidence as well in reaching her determination – a certificate of analysis (which proved that the liquid that the bartender served was beer) and Agent Kekic's unimpeached testimony that the bartender was convicted in Loudoun County General District Court of serving alcohol to a person under the age of 21.  Therefore, we can confidently say that the hearing officer's written decision was not affected by the testimony elicited as a result of the allegedly erroneous co-questioning.

### III.  CONCLUSION

For the foregoing reasons, we affirm the circuit court's October 30, 2015 order affirming the Board's final decision.

<u>Affirmed.</u>