COURT OF APPEALS OF VIRGINIA

Present:   Judges Alston, O'Brien and AtLee
Argued at Fredericksburg, Virginia

HAZEM GARADA, M.D.

v.        Record No. 0732-18-4

VIRGINIA BOARD OF MEDICINE

MEMORANDUM OPINION* BY
JUDGE MARY GRACE O'BRIEN
OCTOBER 23, 2018

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Hazem Garada, *pro se*.

Erin L. Barrett, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General, on brief),
for appellee.

Hazem Garada, M.D. ("Garada") appeals a circuit court order affirming a decision by the

Virginia Board of Medicine ("the Board") to deny his petition for reinstatement of his medical

license.  In his assignments of error, Garada challenges the court's finding that substantial evidence

supported the Board's decision and argues that the court "simply rubber stamped" the denial.  He

also contends that the Board failed to follow required procedures and violated his due process rights

during the hearing.  Finding no error, we affirm the denial of Garada's petition.

BACKGROUND

A.  Medical License Suspension

Garada was licensed to practice medicine in Virginia in 1995.  On June 4, 2004, he pled

guilty in federal court to felony health care fraud, in violation of 18 U.S.C. § 1347.  As part of

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Garada's plea agreement, he "forfeit[ed] and relinquish[ed] permanently his license to practice medicine, in all jurisdictions." Upon notice of his felony conviction, the Department of Health Professions suspended Garada's medical license on August 12, 2004, in accordance with Code § 54.1-2409(A).[1] Garada has not practiced medicine in the United States since that date.

On March 30, 2017, Garada filed a petition to reinstate his medical license pursuant to Code § 54.1-2409(D).[2] He advised the Board that a federal judge authorized him to petition for reinstatement, despite his plea agreement, because his life had been threatened due to his work as a government informant.

### B. Administrative Hearing

On June 22, 2017, the Board convened an administrative hearing to consider Garada's reinstatement application. Prior to the hearing, the Center for Personalized Education for Physicians ("CPEP") evaluated Garada's knowledge of inpatient and outpatient internal medicine. CPEP reported that although Garada "demonstrated a generally acceptable fund of knowledge of internal medicine with scattered deficiencies," he had "significant weaknesses" in the areas of cardiology, endocrinology, and health maintenance. It determined that his clinical judgment and reasoning ranged from good to unacceptable, and his communication skills with simulated patients were inadequate. CPEP concluded that Garada "did not demonstrate appropriate knowledge and clinical judgment to practice in the inpatient setting without 100% direct supervision." CPEP's assessment report was admitted at the hearing.

---

[1] "Upon receipt of documentation by any court . . . that a person licensed, certified, or registered by a board within the Department of Health Professions . . . has been convicted of a felony[,] . . . the Director of the Department shall immediately suspend, without a hearing, the license, certificate, or registration of any person so disciplined, convicted or adjudged." Code § 54.1-2409(A).

[2] "Any person whose license, certificate, or registration has been suspended as provided in this section may apply to the board for reinstatement of his license, certificate, or registration." Code § 54.1-2409(D).

The Board also considered Garada's disciplinary record prior to his August 2004 permanent suspension. In 1998, the Department of Health Professions suspended his license as a result of a suspension of his medical license in Ohio. The Ohio suspension occurred because he failed to disclose a prior suspension in West Virginia for "exercising influence within a patient-physician relationship for the purpose of engaging a patient in sexual activity" and failed to disclose a grievance filed against him in Kentucky.

Later in 1998, Garada's license was reinstated in Virginia with terms and conditions, including a reprimand. In 2003, Garada was again reprimanded in Virginia after the Board found that he had given false information and failed to update his practitioner profile, as required by law. Garada had omitted information regarding a medical malpractice settlement in West Virginia, which resulted from a claim that he rendered "substandard care" by failing to monitor a psychiatric patient who committed suicide. Additionally, in an unrelated criminal proceeding in March 2012, Garada was convicted of misdemeanor credit card fraud, in violation of Code § 18.2-195.

At his reinstatement hearing, Garada presented evidence to establish his competency and mitigate his history of criminal and professional misconduct. Garada testified that although he had not practiced medicine in the United States since 2004, he practiced during 2008 in the United Arab Emirates. He also introduced results from a Special Purpose Exam ("SPEX")[3] reflecting a score of 77, two points higher than the recommended minimum passing score of 75. However, Garada's SPEX scores in the areas of "Health Maintenance/Systems/Legal & Ethical" and "Neonatal/Preschool" were so low that they did not fully register on his performance chart. Garada presented evidence that he completed several Continuing Medical Education courses, and he answered practice questions posed by Board members.

---

[3] The SPEX is administered by the National Board of Medical Examiners and is a standardized examination of current knowledge regarding the general practice of medicine.

Garada attempted to explain his convictions for credit card and health care fraud and submitted a number of character evaluations and letters of recommendation, dating back to 1988. He also requested that the hearing be closed for the Board to consider evidence in support of his argument that his life was in danger due to his work as a government informant. The Board denied his request.

At the conclusion of the hearing, the Board voted unanimously to deny Garada's petition for reinstatement. The Board found that his non-practice of medicine in the United States since 2004, coupled with the results from his CPEP evaluation, established that Garada had "not demonstrated that he is safe and competent to return to the practice of medicine." Further, the Board found that Garada had a "long and persistent history, from 1995 to the present, of moral and ethical lapses resulting, at times, in criminal convictions and medical board actions." The Board concluded that these factual findings constituted "acts of unprofessional conduct" for which it could refuse to issue a medical license under Code § 54.1-2915(A).[4]

---

[4] Code § 54.1-2915(A) authorizes the Board to refuse to issue a medical license for "acts of unprofessional conduct," including:

> (1) False statements or representations or fraud or deceit in obtaining admission to the practice, or fraud or deceit in the practice of any branch of the healing arts;
>     . . . .
> (4) Mental or physical incapacity or incompetence to practice his profession with safety to his patients and the public;
>     . . . .
> (10) Knowingly and willfully committing an act that is a felony under the laws of the Commonwealth or the United States, or any act that is a misdemeanor under such laws and involves moral turpitude;
>     . . . .
> (16) Performing any act likely to deceive, defraud, or harm the public;
>     . . . .
> (20) Conviction in any state, territory, or country of any felony or of any crime involving moral turpitude[.]

C.  Circuit Court Appeal

Garada appealed the Board's decision to the circuit court, which conducted a hearing on November 17, 2017.  Garada contended that the Board should have accommodated his request for a closed hearing because of the implications for national security and his personal safety.  He also asserted that because he was allowed to apply for reinstatement despite his plea agreement in federal court, he must be sufficiently competent:  "the government would not allow me to go in front of a board if they think that this man will do harm to anybody."

The Board responded that Garada initiated the case knowing that reinstatement hearings occur at regular meetings of the Board, which are open to the public under the Freedom of Information Act.  The Board also argued that the proffered "sealed information" was "irrelevant to the case before the [B]oard, which was simply his application for reinstatement of his license to practice medicine."

The court permitted Garada to submit documents under seal.  Upon review, the court determined that the content

> does not change the substantial evidence in favor of the [B]oard's ruling or the decision it ultimately reached.  The evidence . . . which related to [a] chain of email interactions, cannot be . . . determined to be genuine, but also does not support a finding that Mr. Garada has, as he claims, been involved in anti-Jihadist, anti[-]smuggling undercover operations for the past decade.

The court found that substantial evidence in the record supported the Board's decision to deny Garada's application for reinstatement and that Garada failed to show the Board committed an error of law.  The court dismissed the petition for appeal and affirmed the Board's order.

ANALYSIS

A.  Standard of Review

The Virginia Administrative Process Act, Code §§ 2.2-4000 *et seq.* ("VAPA"), governs administrative hearings before the Board of Medicine.  See Va. Bd. of Med. v. Hagmann, 67

Va. App. 488, 499, 797 S.E.2d 422, 427 (2017).  When an administrative decision by the Board is

appealed, the complaining party has the "burden . . . to designate and demonstrate an error . . .

subject to review."  Code § 2.2-4027.

> In an appeal to the circuit court and the Court of Appeals, the
> reviewing court may examine the agency decision for
> "(i) accordance with constitutional right," "(ii) compliance with
> statutory authority," "(iii) observance of required procedures where
> any failure therein is not mere harmless error," and "(iv) the
> substantiality of the evidentiary support for findings of fact."

Hagmann, 67 Va. App. at 499, 797 S.E.2d at 427 (quoting Code § 2.2-4027).  See also

Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

The reviewing court considers the facts "in the light most favorable to sustaining the

agency's decision."  Hagmann, 67 Va. App. at 500, 797 S.E.2d at 428 (quoting Va. Ret. Sys. v.

Blair, 64 Va. App. 756, 770, 772 S.E.2d 26, 32 (2015)).  Additionally, the agency's factual findings

are awarded great deference.  Va. Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123,

125 (1983).  "[T]he court may reject the agency's findings of fact 'only if, considering the record as

a whole, a reasonable mind would *necessarily* come to a different conclusion.'"  Id. (quoting Basil

J. Mezines et al., Administrative Law § 51.01 (1981)).

Pure questions of law are reviewed *de novo*.  Code § 2.2-4027.  "However, where the

question involves an interpretation which is within the specialized competence of the agency and

the agency has been entrusted with wide discretion by the General Assembly, the agency's decision

is entitled to special weight in the courts."  Johnston-Willis, Ltd., 6 Va. App. at 244, 369 S.E.2d at 8.

Accordingly, the agency's "basic law . . . and the purposes of the law are crucial to the

determination of a reviewing court."  Id.

### B. Substantial Evidence

At the conclusion of the hearing, the Board found that Garada did not meet his burden to demonstrate that he is safe and competent to practice medicine. Upon review, the circuit court found that the Board's order was supported by substantial evidence. We agree.

Garada contends that his passing score on the SPEX, some positive comments in the CPEP report, and his ability to answer practice questions posed by Board members during the hearing mandate that his license be reinstated. However, the Board is not required to give all competing evidence the same weight. See Va. Real Estate Bd. v. Kline, 17 Va. App. 173, 175, 435 S.E.2d 596, 598 (1993). Further, although Garada passed the SPEX, he did so with a score only two points higher than the recommended minimum passing score, and his results in certain areas were too low to fully register on the scale. His results on both the SPEX and the CPEP support the Board's finding that Garada lacked sufficient competence to regain his medical license.

In addition to considering that Garada had not practiced medicine in the United States for thirteen years, the Board also reviewed Garada's criminal history and his record of ethical and professional violations. The totality of this evidence supports the Board's decision to deny Garada's petition for reinstatement.

Garada contends that because the Board reinstated another applicant's medical license following a poor CPEP evaluation, it was required to reinstate his license as well. To support his argument, he proffers documents related to another doctor's petition for reinstatement. The proffered documents were not presented to the Board and are not in the circuit court's record; he asks us to consider them for the first time on appeal. "A party in an administrative proceeding must make a specific, contemporaneous objection to a ruling in that proceeding in order to challenge the ruling on appeal." Hagmann, 67 Va. App. at 513, 797 S.E.2d at 434. See also Rule 5A:18. When an issue has not been raised at an administrative hearing or in the circuit court, this Court will not

consider it for the first time on appeal. See Va. Bd. of Med. v. Fetta, 12 Va. App. 1173, 1176, 408 S.E.2d 573, 575 (1991). Accordingly, we decline to consider any new evidence or argument concerning an unrelated petition for reinstatement.

## C. Required Procedure

Garada contends that the Board failed to follow required procedure by denying his request for a closed hearing. We disagree. Code § 54.1-2409(D) entitled Garada to an administrative hearing with the Board regarding his reinstatement petition. The VAPA, in turn, required that the administrative agency "afford opportunity for the formal taking of evidence upon relevant fact issues in any case in which the basic laws provide expressly for decisions upon or after hearing." Code § 2.2-4020(A).

Administrative disciplinary hearings held pursuant to the VAPA are "meetings" as defined under the Freedom of Information Act ("FOIA"). See Code § 2.2-3701. "All meetings of public bodies shall be open," subject to limited exceptions. Code § 2.2-3707(A). The Board is considered a "public body," and an open meeting is defined as "a meeting at which the public may be present." Code § 2.2-3701.

FOIA exempts "[d]iscussion of plans to protect public safety as it relates to terrorist activity or specific cybersecurity threats or vulnerabilities and briefings . . . concerning actions taken to respond to such matters" from the open-meeting requirement. Code § 2.2-3711(A)(19). This public safety exemption, however, does not apply to Garada's reinstatement hearing. Additionally, the court determined that his alleged undercover cooperation with the government on collateral matters had no bearing on his competence to practice medicine. For these reasons, the Board did not commit a procedural error by failing to close the hearing.

D. Due Process

Garada also contends that the Board violated his due process rights by not allowing him to testify "in full," subjecting him to direct questioning by Board members, and failing to consider evidence which he offered under seal. "Constitutional guarantees of procedural due process provide certain 'minimum requirements' that 'must attend administrative hearings.'" Hagmann, 67 Va. App. at 501, 797 S.E.2d at 428 (quoting Hladys v. Commonwealth, 235 Va. 145, 147, 366 S.E.2d 98, 99 (1998)). "These guarantees include 'timely and adequate notice, the right to present evidence and confront adverse witnesses, the right to assistance of retained counsel, and . . . the right to an impartial decision maker.'" Id. (quoting Mall Amusements, LLC v. Va. Dep't of Alcoholic Bev. Control, 66 Va. App. 605, 613, 790 S.E.2d 245, 249 (2016)).

Garada was represented by counsel at his hearing before the Board. He was permitted to testify and present evidence on his own behalf. He cites nothing in the record to support his contention that his rights were curtailed. He has not met his burden to establish that the Board committed an error of law by failing to afford him due process. See id. at 499-501, 797 S.E.2d at 427-28.

Further, Garada's claim that the Board erred by not allowing him to submit evidence under seal, even if accurate, was remedied by the circuit court's consideration of that evidence. The court reviewed the documents and stated unequivocally that even if they were genuine, nothing contained in them refuted the Board's conclusion that Garada's petition for reinstatement should be denied. Clearly the court did not, as Garada claimed, merely "rubber stamp" the decision of the Board.

CONCLUSION

The court did not err in finding that substantial evidence supported the Board's decision to deny Garada's reinstatement application and that Garada demonstrated no error of law. Accordingly, we affirm the court's order.

<u>Affirmed.</u>