COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Beales, Decker and Russell
Argued at Richmond, Virginia


VIRGINIA BOARD OF MEDICINE

OPINION BY
v.        Record No. 1281-16-2          JUDGE MARLA GRAFF DECKER
MARCH 21, 2017

JOHN HENRY HAGMANN, M.D.


FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge

Erin L. Barrett, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General, on briefs),
for appellant.

Ramon Rodriguez, III, M.D. (Christina M. Dwyer; RawlsMcNelis,
P.C., on brief), for appellee.


The Virginia Board of Medicine (the Board) appeals a ruling of the circuit court holding

that it violated the due process rights of John Henry Hagmann, M.D., when it denied his motion

for a second continuance of an administrative hearing under the Virginia Administrative Process

Act (VAPA), Code §§ 2.2-4000 to -4301, resulting in the revocation of Hagmann's license to

practice medicine.  Hagmann raises several related assignments of cross-error.  We hold that the

circuit court erred by ruling that the Board should have granted the motion for a continuance.

We further hold that the circuit court did not err in the ways alleged by Hagmann.  Consequently,

we reverse the circuit court's ruling in part, affirm it in part, and remand this case to the circuit

court with directions that it reinstate the judgment of the Board revoking Hagmann's license to

practice medicine.

## I. BACKGROUND

By letter dated March 12, 2015, the Board of Medicine notified Hagmann that it had summarily suspended his license to practice medicine and scheduled a formal administrative hearing for April 22, 2015.[1] The complaint supporting the suspension was based on Hagmann's actions as the owner of a company through which he taught various courses to students at a federal military medical school. The allegations originated from a claim filed in February 2014 with the Board by the school. The claim centered mainly on Hagmann's conduct in operational medical school courses in 2012 and 2013. The alleged conduct involved allowing the students to perform, upon each other and Hagmann, invasive medical procedures that were unapproved and not undertaken in good faith for medicinal or therapeutic purposes, as well as Hagmann's performing such procedures on some of his students. The allegations also included Hagmann's encouraging students to use alcohol and various drugs in unapproved and dangerous ways. Additionally, Hagmann was accused of providing medical treatment, including prescriptions, without keeping adequate records. Along with notice of the allegations and hearing date, the Board provided Hagmann with nine volumes of exhibits.

In late March 2015, Hagmann, apparently acting *pro se*, requested and received a continuance of the scheduled April 22 hearing date. About six weeks later, by letter of May 7,

---

[1] The Board both prosecutes and adjudicates cases involving licenses to practice medicine, but different arms of the Board handle these different functions. See Code § 54.1-2400(7), (9), (11); Va. Bd. of Med. v. Zackrison, __ Va. App. ___, ___ n.2, ___ S.E.2d ___, ___ n.2 (Mar. 14, 2017); see also Hladys v. Commonwealth, 235 Va. 145, 147-48, 366 S.E.2d 98, 99-100 (1988) (holding that absent "evidence of bias or improper conduct," allowing "a single state agency" to "investigate[], prosecute[], and decide[] a case" that resulted in the termination of a contract between the Virginia Medical Assistance Program and a physician provider did not violate the physician's procedural due process rights). In the instant opinion, unless context suggests otherwise, "we use the term 'Board' when referring . . . to the Virginia Board of Medicine acting . . . in its adjudicative capacity and the term 'Commonwealth' when referring to the . . . Board . . . acting in its prosecutorial capacity." Goad v. Va. Bd. of Med., 40 Va. App. 621, 623 n.1, 580 S.E.2ds 494, 495 n.1 (2003).

2015, the Board notified him that it had rescheduled the hearing for June 19, 2015. Along with the letter, it enclosed an additional exhibit.

By letter of May 8, 2015, Ramon Rodriguez, III, notified the Board that he had been retained to represent Hagmann. Rodriguez requested a second continuance, until the Board's next scheduled meeting date in October 2015. The Board, through the chair of the panel assigned to hear the case, denied the motion for a second continuance. The panel chair also denied the motion for reconsideration of that decision. Based on those rulings, Rodriguez moved to disqualify the panel chair from hearing the case. The Board denied the motion. Rodriguez notified the Board of Hagmann's ongoing objections to its rulings and made clear that neither Rodriguez nor Hagmann, nor anyone on Hagmann's behalf, would attend the June 19, 2015 hearing. Rodriguez did, however, submit twenty-two exhibits for the Board's consideration in Hagmann's defense.

At the June 19, 2015 hearing, the Board took evidence, including testimony offered by the Commonwealth. It also heard argument from the Commonwealth. Hagmann did not appear, nor did any attorney appear on his behalf. After a hearing that lasted over six hours, the Board voted to revoke Hagmann's license to practice medicine and subsequently issued an order reflecting that revocation.

Hagmann appealed the Board's decision to the circuit court, assigning error on six grounds, covering the same issues raised as assignments of error and cross-error in the instant appeal. The court, after hearing argument, concluded that by denying Hagmann's motion for a second continuance, the Board did not afford him "adequate time to prepare a defense." The circuit court also noted that in light of the suspension of Hagmann's medical license prior to the hearing, the Commonwealth would not suffer "substantial harm" from a continuance. The court consequently ruled that the Board violated Hagmann's due process rights by "denying [him] a

meaningful opportunity to have counsel present at the June 19, 2015 hearing." Accordingly, the court remanded the matter to the Board for a new hearing. The court specifically rejected the doctor's claim that the denial of the second continuance violated his personal right to be present. It also rejected the claim that the Board's panel chair should have recused himself. The Board noted this appeal.

## II. ANALYSIS

The Commonwealth contends on appeal that the circuit court erroneously reversed the Board ruling denying Hagmann's motion for a second continuance. On cross-error, Hagmann avers that despite the circuit court's favorable ruling regarding his request for a second continuance, it erroneously rejected several other claims that the Board violated his procedural due process rights.

### A. Standard of Review

On appeal of agency action under the VAPA, the party complaining bears the "burden of demonstrat[ing] an error . . . subject to review." Code § 2.2-4027. The circuit court's role in such an appeal "is equivalent to an appellate court's role in an appeal from a trial court" ruling. Comm'r v. Fulton, 55 Va. App. 69, 80, 683 S.E.2d 837, 842 (2009) (quoting Sch. Bd. v. Nicely, 12 Va. App. 1051, 1062, 408 S.E.2d 545, 551 (1991)). In an appeal to the circuit court and the Court of Appeals, the reviewing court may examine the agency decision for "(i) accordance with constitutional right," "(ii) compliance with statutory authority," "(iii) observance of required procedures where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact." Code § 2.2-4027; see Johnston-Willis, Ltd. v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988).

Pure questions of law are reviewed *de novo*. Code § 2.2-4027; see Va. Ret. Sys. v. Blair, 64 Va. App. 756, 763-64, 772 S.E.2d 26, 29-30 (2015). However, where a decision is within the

discretion of the agency, "judicial interference is permissible only for relief against . . . arbitrary or capricious action that constitutes a clear abuse of . . . delegated discretion." Johnston-Willis, 6 Va. App. at 244, 369 S.E.2d at 8 (quoting Va. Alcoholic Beverage Control Comm'n v. York St. Inn, Inc., 220 Va. 310, 315, 257 S.E.2d 851, 855 (1979)). A body "by definition abuses its discretion when it makes an error of law." Porter v. Commonwealth, 276 Va. 203, 260, 661 S.E.2d 415, 445 (2008) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)).

Regarding subsidiary factual findings, the reviewing court must view the facts "in the light most favorable to sustaining the agency's decision." Blair, 64 Va. App. at 770, 772 S.E.2d at 32. Credibility determinations are factual findings subject to this same standard. Fulton, 55 Va. App. at 80, 683 S.E.2d at 842. The scope of judicial review of an agency exercising its "fact finding function . . . is 'severely limited, partly in deference to the agency's expertise in a specialized field.'" Ga.-Pac. Corp. v. Robinson, 32 Va. App. 1, 4, 526 S.E.2d 267, 268 (2000) (quoting Metro. Cleaning Corp. v. Crawley, 14 Va. App. 261, 266, 416 S.E.2d 35, 38 (1992)). The reviewing court may "reject [the] agency's factual findings only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." Blair, 64 Va. App. at 765, 772 S.E.2d at 30 (quoting Doctors' Hosp. of Williamsburg, LLC v. Stroube, 52 Va. App. 599, 607, 665 S.E.2d 862, 865 (2008)).

It is in light of these legal principles that we examine the parties' claims of error.

### B. Due Process Framework

All assignments of error and cross-error on appeal involve alleged violations of Hagmann's due process rights said to have occurred in the course of the revocation of his license to practice medicine. "Suspension of issued licenses . . . involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment [of the Constitution of the

United States]." Mall Amusements, LLC v. Va. Dep't of Alcoholic Beverage Control, 66 Va. App. 605, 613, 790 S.E.2d 245, 249 (2016) (quoting Bell v. Burson, 402 U.S. 535, 539 (1971)).

Constitutional guarantees of procedural due process provide certain "minimum requirements" that "must attend administrative hearings." Hladys v. Commonwealth, 235 Va. 145, 147, 366 S.E.2d 98, 99 (1988) (citing Goldberg v. Kelly, 397 U.S. 254, 271 (1970)). These guarantees include "timely and adequate notice, the right to present evidence and confront adverse witnesses, the right to assistance of retained counsel, and . . . the right to an impartial decision maker." Mall Amusements, 66 Va. App. at 613, 790 S.E.2d at 249. The VAPA provides similar protections: It states that parties to formal hearings "shall be given reasonable notice" of not only the "time, place, and nature thereof" but also the "matters of fact and law asserted or questioned by the agency." Code § 2.2-4020(B). It further provides that in all such proceedings, "the parties shall be entitled to be accompanied by and represented by counsel, to submit oral and documentary evidence . . . , [and] to conduct cross-examination." Code § 2.2-4020(C). Finally, Virginia law, like constitutional procedural due process, entitles a respondent in an administrative hearing to "an impartial decision-maker." Hladys, 235 Va. at 147, 366 S.E.2d at 99; see Code § 54.1-110 (providing a mechanism for disqualifying a hearing officer or panel member in a hearing conducted by a board overseeing a profession or occupation).

Along with the general legal principles applied to administrative appeals, we examine the parties' assignments of error through the lens of these constitutional and statutory principles.

### C. Motion for Second Continuance

The Commonwealth argues that, contrary to the ruling of the circuit court, the Board's denial of Hagmann's motion for a second continuance did not violate his right to counsel of his

choosing or to adequate notice of the new evidentiary hearing date. On cross-error, Hagmann avers that the circuit court erroneously rejected his claims that the Board further violated his due process rights by denying the motion for continuance without giving adequate consideration to his inability to be present at the hearing and to confront the witnesses against him.

The decision whether to grant a request for a continuance ordinarily lies within the discretion of the court or agency making the determination in the first instance. See Nationwide Mut. Ins. Co. v. Estate of Harrison, 64 Va. App. 110, 118, 765 S.E.2d 154, 158 (2014) (citing Haugen v. Shenandoah Valley Dep't of Soc. Servs., 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007)); cf. GTE Sprint Commc'ns Corp. of Va. v. AT&T Commc'ns of Va., 230 Va. 295, 306, 337 S.E.2d 702, 709 (1985) (corporation commission proceeding). "[T]o entitle a party to a reversal" on the ground of refusal of a continuance request, the challenging party must clearly demonstrate that the hearing officer "abused [his] discretion and that injury resulted to the party complaining." Haugen, 274 Va. at 34, 645 S.E.2d at 265 (quoting Rosenberger v. Commonwealth, 159 Va. 953, 957, 166 S.E. 464, 465 (1932)); see Code § 2.2-4020 (giving agency hearing officers authority under the VAPA to "dispose of procedural requests" and "regulate and expedite the course of the hearing").

Hearing officers, like circuit courts, "necessarily require a great deal of latitude in scheduling." Morris v. Slappy, 461 U.S. 1, 11 (1983). Recognized difficulties relating to scheduling matters for disposition include "assembling the witnesses, lawyers, and jurors [or board panel members] at the same place at the same time, and this burden counsels against continuances except for compelling reasons." Id. Whether an abuse of discretion has occurred must be determined in light of "the circumstances present in [the] case, particularly in the reasons presented" to the hearing officer "at the time the request is denied." Ungar v. Sarafite, 376 U.S. 575, 589 (1964). Due to the discretionary nature of such a determination, "judges in

other courts might well grant a continuance in [particular] circumstances[,] [b]ut the fact that something is arguable does not make it unconstitutional." Id. at 591. In sum, on appeal of a discretionary determination to grant or deny a continuance, unless an error of law is shown, the reviewing court may not substitute its judgment for that of the judge or hearing officer who made the determination below.

### 1. Right to Counsel of One's Choosing

We first examine the Commonwealth's assertion that the denial of Hagmann's motion for a continuance did not deprive him of his due process right to counsel of his choosing. Hagmann suggests that the Sixth Amendment to the Constitution of the United States entitles a criminal defendant to counsel of his choosing and that a respondent in an administrative hearing should be given that same right.

Due process and the VAPA entitle a party to a formal hearing "to be accompanied by and represented by counsel" if he so desires. Goldberg v. Kelly, 397 U.S. 254, 271 (1970); see Code § 2.2-4020(C). However, the right to counsel provided to criminal defendants by the Sixth Amendment does not apply in civil matters before state administrative agencies. See, e.g., Turner v. Rogers, 564 U.S. 431, 441 (2011). We hold that, whatever the precise contours of the right to counsel in the administrative context, the outer limits of the right to *particular* counsel in an administrative proceeding, insofar as a request for a continuance is concerned, are certainly no greater than the right provided to a criminal defendant. Applying the criminal standard to the facts of this case, we conclude that the Board's denial of the motion for a continuance did not amount to a denial of Hagmann's due process right to counsel.

"[T]he essential aim" of the right to counsel in the criminal context is "to guarantee an effective advocate for each . . . defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Wheat v. United States, 486 U.S. 153, 159

(1988). Consequently, "trial judges necessarily retain the discretion . . . 'to make scheduling and other decisions that effectively exclude a [litigant's] first choice of counsel.'" Huguely v. Commonwealth, 63 Va. App. 92, 107, 754 S.E.2d 557, 564 (2014) (quoting United States v. Gonzalez-Lopez, 548 U.S. 140, 152 (2006)); see Ky. W. Va. Gas Co. v. Pa. Public Util. Comm'n, 837 F.2d 600, 618 (3d Cir. 1988) (decided under the Federal Administrative Procedure Act). Accepted standards of review acknowledge that "broad discretion" must be afforded to determinations regarding continuances and that "only an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." Morris, 461 U.S. at 11-12 (quoting Ungar, 376 U.S. at 589).

Here, Hagmann maintained that he had the right not just to an attorney but to a *specific* attorney and, in essence, that this right superseded the Board's discretion under Code § 2.2-4020 to "dispose of procedural requests" and "regulate and expedite the course of the hearing." The evidence, viewed under the proper standard, supports the Board panel chair's rejection of this argument. Hagmann had already received one continuance and had more than three months to retain counsel and prepare for his hearing after receiving the initial notice of suspension. When the matter was rescheduled for a week during which Hagmann's newly retained attorney, Rodriguez, had a conflict, Hagmann requested a second continuance. The initial request provided no explanation regarding the basis for his attorney's conflict. Only after the motion had been denied did Rodriguez explain why he was unavailable.

Additionally, in asking the Board to reconsider the denial of the motion for a second continuance, Hagmann argued merely that he was entitled to a continuance to preserve his right to counsel of his choosing. He provided no indication that any attempt had been made to arrange for substitute counsel, either inside or outside Rodriguez's law firm, despite evidence in the record that Rodriguez's firm held itself out as "Lawyers for Complex Medical Cases" and that

- 9 -

the firm had four different offices in Virginia. The Board panel chair also expressly found that "[t]here are a significant number of attorneys within the Commonwealth able to assist [Hagmann] with his administrative hearing[] and likely several [who] work directly with Mr. Rodriguez." The record, viewed in the light most favorable to the Commonwealth and through the lens of the agency's expertise in this area, supports the Board's ruling regarding the preservation of Hagmann's right to counsel. See Ga.-Pac. Corp. v. Robinson, 32 Va. App. 1, 4, 526 S.E.2d 267, 268 (2000) (requiring deference to agency expertise on factual findings).

Consequently, the Board, in keeping with analogous principles in the criminal context, did not abuse its discretion by rejecting Hagmann's claim that he was entitled to a second continuance because his attorney of choice was unavailable. See Huguely, 63 Va. App. at 107, 754 S.E.2d at 564; see also Morris, 461 U.S. at 13-14 & n.6 (rejecting the notion that the absence of a "meaningful relationship" between the accused and his attorney is "the equivalent of no counsel" under the Sixth Amendment).[2]

Further, in the circuit court, Rodriguez conceded that Hagmann had signed an agreement retaining *his firm*, not him personally, and that another attorney in his firm routinely represented doctors in proceedings before the Board. Rodriguez also conceded that he never contacted that attorney regarding whether he was available to represent Hagmann at the Board hearing on June 19, 2015. Contrary to the decision of the circuit court, these factual representations support the

---

[2] Persuasive authority supports this result. Cf. In re Franks Flower Express, 219 N.L.R.B. 149, 149 (1975) (holding that no due process violation of right to counsel of choice under the Federal Administrative Procedure Act occurred where the party's original attorney became ill and his firm had five days to arrange for substitute counsel); Rehab. Facility at Austin, Inc. v. Cooper, 962 S.W.2d 151, 155-56 (Tex. App. 1998) (holding that no due process violation occurred in medical malpractice case where the hospital's lead attorney developed a scheduling conflict ten days prior to trial and the court denied a continuance because the hospital continued to be represented by an attorney in the same firm who had signed pleadings and engaged in pretrial discovery).

conclusion that the Board's denial of the motion for a second continuance did not deprive Hagmann of his due process right to retained counsel.

Other factors articulated by the Board also support its denial of the motion to continue the case despite counsel's scheduling conflict. Complications existed regarding rescheduling the victim witnesses, all of whom were members of the military, to testify in person in October 2015 because they would no longer be students at that time and would be engaged in mandatory field exercises in more than one branch of the armed services. See, e.g., Bolden v. Commonwealth, 11 Va. App. 187, 193, 397 S.E.2d 534, 538 (1990) (recognizing the impact of a continuance on the opposing party's witnesses as a factor in assessing whether the court abused its discretion in denying an additional continuance motion). The Board specifically indicated that it considered trying to postpone Hagmann's hearing for a shorter period of time, until August 2015, but that an insufficient number of Board members would be available to provide a quorum. It also noted that, if postponed from June 2015, it could not guarantee that the matter could be heard on its October 2015 docket and, accordingly, that a continuance might result in postponing the hearing until February 2016. Although the record did not establish whether any of the victims would be available to testify in February 2016, it was undisputed that they would no longer be in school at that time and that securing their attendance would present added difficulties.

Additionally, regardless of the purpose of Code § 54.1-2408.1's requirement that the Board hold a hearing in a "reasonable time" after a suspension, the Board was permitted by the entire statutory scheme to consider the impact of the continuance on those other than the licensee. See Code §§ 54.1-100, -2400, -2915. Despite Hagmann's express waiver of the protections of Code § 54.1-2408.1 shortly after he asked for a second continuance, the Board was entitled to consider factors such as the effect of a continuance on the victims and other witnesses. See generally Barfield v. Commonwealth, 20 Va. App. 447, 453, 457 S.E.2d 786, 789 (1995)

- 11 -

(recognizing that granting a continuance carries the risk that the memories of witnesses will fade).[3]

Finally, the fact that the Board had statutory authority to permit the taking of *de bene esse* depositions pursuant to Code § 2.2-4022 did not compel it to grant Hagmann's motion for a second continuance. Although the Commonwealth might have been able to provide the testimony of any witnesses unable to attend the postponed hearing by means of such depositions, the Board expressed a preference for live testimony. Cf. Rowland v. Shurbutt, 259 Va. 305, 308, 525 S.E.2d 917, 919 (2000) (recognizing that where evidence is presented by deposition, the trial judge does not see and hear the witness). It was within the discretion of the Board to determine whether the circumstances alleged by the doctor as supporting his request for a continuance, to a time at which the Commonwealth's student witnesses were likely to be unable to testify in person, outweighed the benefit to the Board of hearing the witnesses testify, either in person or by telephone, and of being able to question the witnesses themselves. See generally Mall Amusements, 66 Va. App. at 615, 790 S.E.2d at 250 (recognizing that a hearing officer, like a trial judge, does not err by "ask[ing] questions of witnesses who are testifying" as long as the questions are reasonable and unbiased). Here, out of the nine witnesses who testified before the Board, the panel members actively questioned seven of them, including all five of the former student victims. The panel members would have been unable to question the witnesses

---

[3] Also, the Board chair referenced the "reasonable time" provision of Code § 54.1-2408.1 only in his original denial of the doctor's motion for a second continuance on May 12, 2015. After Hagmann made clear in his motion to reconsider on May 20, 2015, that he waived the protections of the "reasonable time" provision of Code § 54.1-2408.1, the Board did not specifically rely on it again. See Yarborough v. Commonwealth, 217 Va. 971, 978-79, 234 S.E.2d 286, 291-92 (1977) ("[W]e will not fix upon isolated statements . . . taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied.").

themselves if granting a continuance had resulted in their having to permit the five student witnesses to testify by *de bene esse* deposition.

Accordingly, we hold that the Board's denial of Hagmann's motion for a second continuance did not deprive him of his due process right to counsel of his choosing. Hagmann's right to counsel of his choosing was not absolute, and the Board was entitled to exercise its discretion in weighing various other factors relevant to the decision, including the availability of substitute counsel, a quorum of the Board, and witnesses. The circuit court erred by ruling to the contrary.

### 2. Right to Meaningful Notice of Hearing

The circuit court ruled that the Board, by refusing to reschedule the hearing a second time, "did not afford [Hagmann] adequate time to prepare a defense to a matter the Board had been investigating for over a year prior to providing [the doctor] with notice of hearing." The Commonwealth points out that the court based its ruling on the date on which the Board provided Hagmann "with notice of [the rescheduled] hearing"—May 7, 2015. It argues that the court erroneously concluded, therefore, that Hagmann had only six weeks' notice of the hearing and that this period of time violated his constitutional right to due process. Viewing the record under the proper standard, we hold that the circuit court erred in reversing the Board's determination that Hagmann had adequate notice of the hearing to satisfy due process concerns.

Under settled principles,

> [a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

Mullane v. Cent. Hanover Tr. Co., 339 U.S. 306, 314-15 (1950), quoted with approval in Oak Hill Nursing Home, Inc. v. Back, 221 Va. 411, 417, 270 S.E.2d 723, 726 (1980); see Crystal Oil Co. v. Dotson, 12 Va. App. 1014, 1018, 408 S.E.2d 252, 254 (1991).

Hagmann received notice of the June 19, 2015 hearing date six weeks in advance. However, he received notice of the license suspension and the vast majority of the Commonwealth's evidence on March 13, 2015, which was fourteen weeks in advance. Only one exhibit, the case addendum dated March 13, 2015, was provided to the appellant in conjunction with the hearing notice of May 7, 2015. That exhibit comprises 50 pages of what the doctor represents is a total of about 3,000 pages of evidentiary material. Accordingly, Hagmann had about 2,950 pages of the Commonwealth's exhibits fourteen weeks in advance. Further, of those 2,950 pages, about 2,800 were produced by Hagmann himself.[4] Thus, the record shows that only about 150 pages of the materials provided to Hagmann fourteen weeks in advance, in conjunction with the summary suspension of his license, comprise documents produced by the Commonwealth.

The only document provided to Hagmann six weeks in advance—the 50-page case addendum—describes a March 9, 2015 visit by three investigators to Hagmann's training facility in Partlow, Virginia, where he maintained a classroom and storage area. The addendum includes a one-page statement from Dr. Hagmann and approximately half-page summaries of interviews with five students who apparently were on the premises at the time of the visit. The remaining forty-five pages are supporting documentation that consists mainly of photographs of the Partlow facility, the medications stored there, and various packing lists and drug logs. Therefore, once

---

[4] About 2,300 of the 2,950 pages of documents are exclusively "course materials" of Hagmann's company, which were produced by him prior to the license suspension and appear largely irrelevant to the allegations before the Board. Additionally, Hagmann does not dispute that another approximately 500 pages of documents comprise evidence that originated with or was collected from him.

- 14 -

again, the bulk of the evidence was information that Hagmann already possessed. Although Hagmann's personal familiarity with these documents would not relieve his counsel of the need to review them in preparation for the hearing, this familiarity certainly allowed Hagmann to better assist his attorney in preparing in a more expeditious fashion.

The fact that the Board investigated Hagmann for about a year before summarily suspending his license did not entitle him to a longer period of time in which to prepare for a hearing. Due process requires reasonableness, not equivalency. See, e.g., Back, 221 Va. at 417, 270 S.E.2d at 726. Additionally, the record reflects that the Board completed its initial investigation in about a month and that much of the extra time that elapsed before it suspended Hagmann's license was due to his own delays in responding to requests from the Board.

Accordingly, the record, viewed under the proper standard, shows that Hagmann had a period of fourteen weeks during which he and his attorney, if he had promptly retained one, could have reviewed the manageable amount of evidence, sought additional discovery, and made tentative arrangements for any necessary witnesses.[5] Cf. Miller v. Grier S. Johnson, Inc., 191 Va. 768, 772, 62 S.E.2d 870, 872 (1951) (holding that a litigant's lack of diligence in retaining counsel did not provide grounds for a continuance), cited with approval in Haugen, 274 Va. at 33, 645 S.E.2d at 264. Substitute counsel would then have had six weeks to familiarize himself with the case and take additional steps to prepare for the hearing. The panel chair who ruled on the motion was a licensed physician. Consequently, he was well situated to assess the time that Hagmann and his attorney, who was also a licensed physician, would realistically need to review

---

[5] Rodriguez first informed the Board that he was representing Hagmann on May 8, 2015, the day after the Board notified Hagmann that it had rescheduled the hearing for June 19, 2015. Rodriguez represented at oral argument in this Court that he believed Hagmann retained him in late April 2015.

the evidence for the purpose of responding to the allegations in the complaint.[6]  See Ga. Pac. Corp., 32 Va. App. at 4, 526 S.E.2d at 268 (requiring particular appellate deference to factual findings influenced by agency expertise).  For these reasons, we hold that the circuit court's ruling setting aside the Board's determination that Hagmann received adequate notice of the hearing constituted the impermissible substitution of the court's judgment for the Board's rather than the correction of an error of law.

### 3.  Licensee's Right to be Present and Confront Witnesses

The circuit court expressly rejected Hagmann's claim that the Board's denial of the motion for a second continuance prevented him from exercising his rights to be present at the hearing and to confront his accusers.  Hagmann asserts in his first and second assignments of cross-error that these rulings were erroneous.  We hold that the record supports these rulings by the circuit court.

Due process includes the right of a respondent in an administrative proceeding to be present at a hearing and to confront his accusers.  See, e.g., Hladys, 235 Va. at 147, 366 S.E.2d at 99.  However, when a party's motion for a continuance has been denied, he may not manufacture prejudice where it would otherwise not exist simply by "fail[ing] to offer evidence or . . . [proceeding] without counsel."  Ungar, 376 U.S. at 589; see Venable v. Venable, 2 Va. App. 178, 182, 342 S.E.2d 646, 649 (1986); cf. Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971) (noting in the civil context that "the hearing required by due process is subject to waiver").

---

[6] Even using the time period of six weeks, the record does not establish an abuse of discretion by the Board.  The Board was entitled to consider the totality of the circumstances, including:  the interest of the victims in a prompt resolution of the charges; the difficulty rescheduling the Commonwealth's witnesses a second time due to mandatory field exercises and other deployment-related issues; and the problems associated with rescheduling at the Board level, including docket management and panel member availability.  These circumstances further support our conclusion that the circuit court erred in setting aside the Board's determination.

Hagmann's claim is based on his allegation that he had pre-existing plans for international travel. The Board was entitled to reject Hagmann's evidence regarding the prescheduled nature of his trip. See, e.g., Blair, 64 Va. App. at 770, 772 S.E.2d at 32 (setting out standard of review for factual findings). Neither his first motion for a continuance, made in March 2015, nor his second such motion, made on May 8, 2015, mentioned Hagmann's trip. Not until his motion for reconsideration of the denial of the second continuance, which he made less than a month before the scheduled June 19 hearing, did he first mention his planned trip. Also at that time, he described the trip as an "annual" one. The Board panel chair noted that the failure to mention the trip sooner caused him to question the advance nature of those plans. This was an inference that the panel chair was entitled to draw in his role as fact finder and to which the circuit court was required to defer because the record contained evidence to support it. See Ungar, 376 U.S. at 591.

Additionally, Hagmann's credit card statement shows that he did not book his flight until March 28, 2015. The booking, therefore, occurred *after* he received notice of the license suspension and obtained his first continuance, at a time when he did not know the date for which the hearing would be rescheduled. The record also contains no evidence that he presented the Board with any "avoid" dates when he requested the first continuance. Finally, the Board found that if Hagmann had wanted to attend the June 19 hearing, he could have changed his return flight to a day or two prior to the hearing. This finding was not plainly wrong.

Consequently, the record fully supports the circuit court's ruling that the Board's denial of the second continuance motion did not violate the doctor's due process rights to be present and to confront adverse witnesses.

*D. Disclosure of Evidence*

Hagmann, in his third assignment of cross-error, asserts that the circuit court erred in concluding that the Board's "failure to require complete disclosure of evidence" did not violate his due process right to an impartial hearing. The record shows that the evidence Hagmann sought comprised summaries of the statements of various witnesses that the Uniformed Services University of Health Sciences (USUHS), a federal military medical school, obtained during its internal investigation. Hagmann received summaries of the statements of nine witnesses but argues that the Board "had a duty to require the USUHS to produce all thirty" of the witness statements because they could have contained exculpatory evidence. This claim fails on procedural grounds.

A party in an administrative proceeding must make a specific, contemporaneous objection to a ruling in that proceeding in order to challenge the ruling on appeal. E.g., Pence Holdings, Inc. v. Auto Ctr., Inc., 19 Va. App. 703, 707-08, 454 S.E.2d 732, 734-35 (1995), cited with approval in Doe v. Va. Bd. of Dentistry, 52 Va. App. 166, 176, 662 S.E.2d 99, 104 (2008) (*en banc*); see French v. Va. Marine Res. Comm'n, 64 Va. App. 226, 232 n.2, 767 S.E.2d 245, 249 n.2 (2015). Additionally, a litigant in such a proceeding may not "approbate and reprobate[,] . . . taking successive positions in the course of litigation that are either inconsistent with each other or mutually contradictory." See, e.g., Mar v. Malveaux, 60 Va. App. 759, 768, 732 S.E.2d 733, 737 (2012) (quoting Rowe v. Commonwealth, 277 Va. 495, 502, 675 S.E.2d 161, 164 (2009)).

Application of these principles establishes that Hagmann waived this assignment of cross-error below. In the proceedings before the Board, Hagmann argued merely that he needed more time to gather and submit evidence himself. He did not contend that the Board had a duty to obtain additional witness statements for him, nor did he ask the Board to issue a subpoena for

the statements pursuant to Code § 2.2-4022. In the circuit court, Hagmann initially complained that the Board "had a duty to require USUHS to produce all thirty witness statements." Counsel for the Commonwealth replied that two federal investigations were proceeding simultaneously, one involving the contracts of Hagmann's company with the federal government and a second one involving "the practices in his classes." Counsel further explained that the only witness statements that the Board received from the USUHS were the nine statements "from medical students having direct knowledge of [the doctor]" and "the practice in [his] classes." Counsel also stated that the USUHS asserted that the additional witness statements were not relevant and were unavailable due to federal privilege. Hagmann conceded that the Board turned the nine witness statements it received over to him, that it could not turn over evidence it did not have, and that it had no obligation to obtain the additional statements for him. His argument in the circuit court, therefore, morphed back into the initial claim that he had made before the Board— that the Board was required "to afford [him] the opportunity to [gather]" the evidence. See Mar, 60 Va. App. at 768, 732 S.E.2d at 737.

In short, Hagmann failed to register a contemporaneous objection to the Board's failure to produce the additional witness statements. Further, he conceded in the circuit court that the Board could not produce the additional statements because it did not have them, and he argued merely that the Board was required to give him the opportunity to obtain the evidence. Consequently, he is barred from complaining on appeal that the circuit court erred in not setting aside the Board's ruling regarding production of the additional statements.

*E.  Motion for Recusal*

Hagmann's fourth assignment of cross-error challenges the circuit court's affirmance of the Board's decision not to disqualify the panel chair due to alleged bias.[7]  He asserts that this ruling was both (1) a constitutional due process violation and (2) a failure to observe proper VAPA procedure.

We hold first that only Hagmann's non-constitutional procedural claim is properly before this Court on appeal.  In the circuit court, Hagmann argued only that the denial of the recusal motion constituted a failure to observe proper procedure, not a violation of due process, and this was the ground on which the circuit court ruled on this point.  Accordingly, to the extent that this assignment of cross-error raises a due process claim, the claim is barred by Hagmann's failure to raise it below.  See French, 64 Va. App. at 232 n.2, 767 S.E.2d at 248-49 n.2; cf. Stokes v. Commonwealth, 61 Va. App. 388, 396, 736 S.E.2d 330, 335 (2013) (noting that the contemporaneous objection principles in Rule 5A:18 may bar constitutional claims in criminal cases).

Regarding Hagmann's claim that the Board's failure to order the recusal of the panel chair was a failure to observe proper procedure, resulting in more than harmless error, the record does not support this claim.

Pursuant to Code § 54.1-110(B), a Board member "shall disqualify himself from a proceeding and withdraw from any case in which he cannot accord fair and impartial consideration."  The statute further provides that any party may request disqualification "by stating with particularity the grounds upon which it is claimed that fair and impartial consideration cannot be accorded."  Code § 54.1-110(B); see Va. Bd. of Med. v. Fetta, 244 Va.

---

[7] Hagmann contends both that the panel chair erred in denying his motion and that the remaining Board members also erred in voting that recusal was not required.  We consider these claims together.

276, 283, 421 S.E.2d 410, 414 (1992). Finally, based on those allegations, "[t]he remaining members of the . . . panel shall determine whether the individual should be disqualified." Code § 54.1-110(B). The burden of proving such "bias or prejudice lies with the party seeking recusal." Prieto v. Commonwealth, 283 Va. 149, 163, 721 S.E.2d 484, 493 (2012); see Hladys, 235 Va. at 148-49, 366 S.E.2d at 100 (applying this standard in the agency context). On appellate review of such a determination, state administrators "are assumed to be [people] of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances" absent proof to the contrary. See Hladys, 235 Va. at 148, 366 S.E.2d at 100 (quoting Withrow v. Larkin, 421 U.S. 35, 55 (1975)). Therefore, we apply an abuse of discretion standard in reviewing a recusal decision. Rios v. Ryan Inc. Cent., 35 Va. App. 40, 45, 542 S.E.2d 790, 792 (2001).

Hagmann argues that the panel chair's denial of his motion for a second continuance, as well as the statements the chair made in conjunction with the ruling, show that the chair was biased against him and should have been recused.

We have already concluded that the record supports the Board's denial of the motion for a second continuance. See supra Section II.C. Therefore, based solely on the first part of Hagmann's claim—that the mere fact of the denial of his motion for a second continuance showed bias *per se*—the record supports the circuit court's determination that the Board panel did not commit procedural error. If every hearing officer who issued a pre-hearing ruling against a litigant were forced to recuse himself, multiple hearing officers would be required to resolve every such proceeding. This is simply not the proper legal standard by which to gauge bias. Cf. Stamper v. Commonwealth, 228 Va. 707, 714, 324 S.E.2d 682, 686 (1985) ("The defendant's motion points to several adverse rulings at trial as indications that the judge was prejudiced

against him. But if this were the criterion of prejudice, no rulings could ever be made which a party opposes.").

Consequently, we proceed to evaluate the statements that the panel chair made in conjunction with the ruling to determine whether they compel a different outcome. Hagmann characterizes the panel chair's explanation of the denial of the second continuance as a statement "that '[e]ven if good cause had been shown, the motion [for a continuance] would be denied. . . .'" (Alterations in original). He argues that this statement "clearly suggests prejudice" toward him and required that the panel chair be recused.

In analyzing the Board's decision on this issue, we review subsidiary factual findings in the light most favorable to sustaining the agency's action. Blair, 64 Va. App. at 770, 772 S.E.2d at 32. Additionally, when reviewing a recusal motion based on comments in the record, "those comments must be taken in the context of the record as a whole." Prieto, 283 Va. at 164, 721 S.E.2d at 494. "[W]e will not fix upon isolated statements . . . taken out of the full context in which they were made[] and use them as a predicate for holding the law has been misapplied." Yarborough v. Commonwealth, 217 Va. 971, 978-79, 234 S.E.2d 286, 291-92 (1977) (holding that where the judge's statements "furnish[ed] alternative bases, one correct and one erroneous, for his finding of defendant's guilt," the "judgment of conviction" was not "plainly wrong or without evidence to support it" and affirmance was proper).

Viewing the record in this fashion, we conclude that Hagmann takes the panel chair's comments out of context and omits a key portion of the chair's explanation for his ruling. The panel chair's statements, while perhaps inartfully phrased, support the conclusion that the statements amounted to the provision of alternative rationales for the continuance ruling. First, at the time when the panel chair stated that the motion for a continuance would be denied "[e]ven if good cause had been shown," the only reason that Hagmann had given for requesting a

- 22 -

continuance was his attorney's "unavoidable, preexisting scheduling conflict that week." Hagmann's motion provided neither specific information regarding the basis for his attorney's conflict nor any explanation as to why another lawyer, in the same firm or a different one, could not represent him at the scheduled hearing.[8]  As a result, the panel chair concluded that Hagmann's vague explanation regarding the unavailability of a single lawyer within the firm was not a persuasive reason to grant the motion for a second continuance.

Viewing the record as a whole, the panel chair then said that even if Hagmann *had* shown good cause for a continuance based on the unavailability of his attorney, the chair would have "denied [the motion] *due to several additional reasons*," which the chair then explained in detail. (Emphasis added).  Those reasons included the multiple witnesses scheduled to testify about the "sensitive allegations" and the chair's finding that rescheduling them to testify during the October 2015 time period requested by the doctor "would be extremely problematic if not impossible" due to their military obligations.  The panel chair also pointed to the possible negative impact on Hagmann and the system due to additional delay in resolving the matter. Although the wording of the panel chair's ruling at this stage of the proceedings may have been somewhat inartful, a reasonable interpretation based on the record is that even if he had given credence to Hagmann's claims about his attorney's scheduling problem, which counsel had not yet explained in any way, other factors, *when weighed against those difficulties*, counseled in favor of his denying the continuance.  The evidence, so viewed, supports the circuit court's conclusion that the Board did not abuse its discretion in refusing to require the recusal of the panel chair under these circumstances.

---

[8] Hagmann's attorney provided additional information about his conflict in his subsequent motion to reconsider the denial of the second continuance motion.  He did not, however, mention any effort to secure alternate counsel for Hagmann, arguing instead that Hagmann was entitled to counsel of his choosing, a position we have rejected.  See supra Section II.C.1.

## III.  CONCLUSION

We hold that the circuit court erred by substituting its discretion for the Board's in reversing its denial of Hagmann's motion for a second continuance.  We further hold that the circuit court did not err in rejecting Hagmann's claims that the Board violated his due process rights by failing to properly consider his inability to be present at the hearing, to confront the witnesses against him, to receive all relevant evidence, and to have a fair and impartial adjudication of the issues.  Consequently, we reverse the circuit court's ruling in part, affirm it in part, and remand this case to the circuit court with directions that it reinstate the judgment of the Board revoking Hagmann's license to practice medicine.

<u>Affirmed in part, reversed in part, and remanded with instructions.</u>