UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:    Judges O'Brien, Malveaux and Senior Judge Annunziata
Argued by videoconference


ZAAKI RESTAURANT AND CAFÉ, LLC

MEMORANDUM OPINION* BY
v.        Record No. 0318-21-4        JUDGE MARY GRACE O'BRIEN
JANUARY 18, 2022

VIRGINIA DEPARTMENT OF HOUSING AND COMMUNITY
 DEVELOPMENT STATE BUILDING CODE
 TECHNICAL REVIEW BOARD,
 JAY RIAT, BUILDING OFFICIAL FOR FAIRFAX
 COUNTY, VIRGINIA AND
 FAIRFAX COUNTY, VIRGINIA


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Stephen C. Shannon, Judge

Aristotelis A. Chronis (Chronis, LLC, on briefs), for appellant.

Justin I. Bell, Assistant Attorney General (Mark R. Herring,[1]
Attorney General; Donald D. Anderson, Deputy Attorney General;
Heather Hays Lockerman, Senior Assistant Attorney General &
Section Chief, on brief), for appellee Virginia Department of
Housing and Community Development State Building Code
Technical Review Board.

Sara G. Silverman, Assistant County Attorney (Elizabeth D. Teare,
County Attorney; T. David Stoner, Deputy County Attorney, on
brief), for appellees Jay Riat, Building Official for Fairfax County,
Virginia and Fairfax County, Virginia.


Zaaki Restaurant and Café, LLC ("appellant") appeals a circuit court order affirming the

decision of the Virginia Department of Housing and Community Development State Building Code

Technical Review Board ("TRB"). The TRB determined that the Fairfax County Building Official

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

properly revoked appellant's certificate of occupancy. For the reasons below, we find that the court did not err in upholding the TRB's revocation decision.

BACKGROUND

Zaaki is a limited liability corporation that obtained a non-residential use permit to operate a restaurant located in Fairfax County in June 2012. On March 8, 2013, the Fairfax County Department of Code Enforcement cited appellant for violating the Uniform Statewide Building Code by constructing unpermitted additions. On May 2, 2013, because the violations remained unresolved, the Department issued a notice of violation and two criminal summonses to appellant, pursuant to Virginia Construction Code ("VCC")[2] §§ 115.1and 115.2. The summonses were subsequently resolved by order of *nolle prosequi* to allow appellant time to submit a "minor site plan," which was necessary for obtaining the required permits. Appellant initially attempted to obtain the minor site plan but ultimately abandoned the effort in 2016.

Between April 2014 and October 2019, neither the Building Official nor any of his technical assistants inspected the property. On October 23, 2019, the Building Official received a complaint about a rear structure on appellant's property. Victoria Fitzgerald, an assistant building official, researched county records and examined the property on October 24 and November 1. Fitzgerald did not obtain an inspection warrant and only examined the areas "open to the public." She observed various violations, including a canopy structure with glass panels, a wooden deck with a bar, a rear addition, new plumbing and electrical fixtures, a canopy on two sides of the property structure, interior alterations, and installation of gas-fired heaters and exhaust fans. Fitzgerald also

---

[2] The VCC is part of the Uniform Statewide Building Code ("Building Code"), 13 VAC 5-63-10 to -549, which is a series of regulations promulgated by the Department of Housing and Community Development pursuant to Code § 36-98. Although the VCC is codified at 13 VAC 5-63-10 to -390 in the Building Code, references herein are to the VCC's internal subsection numbering system.

noted that planters blocked access to the property from the road. All the alterations and additions were undertaken and completed without permits.

Fitzgerald learned that appellant's business hours were from 11:00 a.m. until 5:00 a.m. on weekends. Accompanied by a fire marshal, she returned to the property at 8:30 p.m. on Friday, November 1, and they observed 102 people on the premises, which had a permit for a maximum of forty-nine occupants.

On November 8, 2019, the Building Official issued a revocation notice for appellant's certificate of occupancy, effectively closing the business. The notice identified eight distinct VCC violations dating back to 2013. It also listed safety hazards created by the conditions on the property, specified the corrective actions required, and contained information concerning appellant's right to appeal. On November 12, the Building Official issued a corrective work order to appellant. According to the record, a corrective work order is an administrative document prepared by Fairfax County to provide more information about the violations and necessary corrective action.

On November 15, appellant was advised that the Building Official would restore the certificate of occupancy if appellant met six conditions. Appellant did not accept the offer.[3] Instead, appellant filed a complaint in the Fairfax County Circuit Court to enjoin the revocation. The court continued the matter to allow appellant to amend its complaint to raise constitutional challenges and serve the pleading on the Attorney General. Appellant took no further action in the circuit court concerning its request for an injunction.

In addition to initiating the circuit court action, appellant pursued administrative remedies. Preliminarily, appellant requested that the Building Official stay the revocation pending the appeal

---

[3] At the time of the hearing before the TRB, appellant had not corrected the violations listed in the corrective work order.

to the Fairfax County Board of Building Code Appeals. The Building Official denied this request, and the Board subsequently upheld the revocation.

Appellant appealed the Board's decision to the TRB. At a December 19 hearing, Fairfax County presented unrebutted evidence of Building Code violations that occurred between 2013 and 2019. The violations included removal of counters in 2014, a fabric addition converted into a glass enclosure without a permit in 2016, installation of gas-fired heaters and exhaust fans without final inspections in 2017, construction of a roof structure and electrical work without permits in 2018, and the additional violations that Fitzgerald and the fire marshal observed in 2019.

Appellant argued that VCC § 116.3 required the Building Official to issue multiple notices of violation before revoking a certificate of occupancy, that the violations were time-barred under VCC § 115.2.1, and that the Building Official's actions violated due process. During the hearing, appellant also moved to admit certain inspection documents that were not included in the record prior to the hearing. The TRB declined to admit the documents at that time but advised appellant that it would "reconsider the issue after testimony, before argument, if necessary." Appellant did not renew its request to admit the documents at any point during the hearing.

The TRB found repeated violations of the VCC and upheld the Board's decision. The TRB ruled that the enforcement was not time-barred and VCC § 116.3 authorized the Building Official to revoke appellant's certificate of occupancy. Appellant appealed the TRB decision to the circuit court, which affirmed the TRB ruling.

Appellant assigns eleven errors to the court's ruling. It contends that the court incorrectly interpreted VCC § 116.3 because: there was no evidence of repeated violations; the only notice of violation was issued in 2013; the TRB was required to issue a corrective work order and a notice of violation before revoking the certificate of occupancy; the corrective work order rescinded the revocation notice; and appellant should have been given a reasonable time for compliance before

- 4 -

the revocation. Appellant further argues that the revocation was barred by the statute of limitations. As a result, appellant contends that the revocation notice was invalid.

Appellant also argues that the court's affirmance violated due process rights because the Building Official failed to grant a stay of the revocation. Appellant further contends that the evidence presented at the hearing was a result of an illegal search and the revocation notice was issued "arbitrarily, capriciously and in bad faith." Finally, appellant argues that the court erred by affirming the Board's exclusion of the inspection reports.

## ANALYSIS

### 1. Standard of Review

The Virginia Administrative Process Act ("VAPA") authorizes judicial review of agency decisions. *See* Code § 2.2-4026. "The circuit court's role in such an appeal 'is equivalent to an appellate court's role in an appeal from a trial court' ruling." *Va. Bd. of Med. v. Hagmann*, 67 Va. App. 488, 499 (2017) (quoting *Comm'r v. Fulton*, 55 Va. App. 69, 80 (2009)). On appeal of agency action under the VAPA, the "burden shall be upon the party complaining of agency action to designate and demonstrate an error of law subject to review by the court." Code § 2.2-4027. "In both the circuit court and this Court, appellate review of an agency action is limited to issues of law." *Gaines v. Dep't of Hous. & Cmty. Dev. State Bldg. Code Tech. Rev. Bd.*, 71 Va. App. 385, 390 (2020). These issues include

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027.

On appeal, "the sole determination as to factual issues is whether substantial evidence exists in the agency record to support the agency's decision. The reviewing court may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind necessarily would come to a different conclusion." *Avalon Assisted Living Facilities, Inc. v. Zager*, 39 Va. App. 484, 500 (2002) (quoting *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 242 (1988)).

Pure questions of law are reviewed *de novo*. Code § 2.2-4027. "However, '[w]e accord great deference to an administrative agency's interpretation of the regulations it is responsible for enforcing.'" *Gaines*, 71 Va. App. at 390 (alteration in original) (quoting *Hilliards v. Jackson*, 28 Va. App. 475, 479 (1998)). In applying the *de novo* standard, "courts do not defer to an agency's interpretation '[i]f the issue falls outside the area generally entrusted to the agency, and is one in which the courts have a special competence, *i.e.*, the common law or constitutional law.'" *Commonwealth ex rel. Va. State Water Control Bd. v. Blue Ridge Env't Def. League, Inc.*, 56 Va. App. 469, 481 (2010) (alterations in original) (quoting *Johnston-Willis*, 6 Va. App. at 243), *aff'd*, 283 Va. 1 (2012). Where a court must interpret a statute, the "plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Gaines*, 71 Va. App. at 391 (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)).

### 2. Certificate of Occupancy Revocation Under VCC § 116.3

Six of appellant's assignments of error challenge the TRB's interpretation of VCC § 116.3. That section provides in pertinent part as follows: "A certificate of occupancy may be revoked or suspended . . . where there are repeated violations of the [Building Code] after the certificate has been issued. . . . The revocation or suspension shall be in writing and shall state the necessary corrections or conditions for the certificate to be reissued or reinstated . . . ." VCC § 116.3. Appellant contends that VCC § 116.3 must be read in conjunction with the subsections of VCC § 115. VCC § 115.1 makes it punishable as a misdemeanor for any "owner . . . to violate" the VCC

provisions. VCC § 115.2 requires that before imposing criminal sanctions, the Building Official shall "issue a written notice of violation to the responsible party" if the violations have not been "corrected or complied with within a reasonable time." VCC § 115.3 provides that this notice of violation is a prerequisite to criminal enforcement.

Appellant interprets VCC § 116.3 as also requiring written notice of a violation before the Building Official can revoke a certificate of occupancy. Appellant argues that without the prerequisite notice, it had no reasonable opportunity to comply, and therefore, the revocation was invalid.

It is a well-established principle that when "the language of a statute is unambiguous, [courts] are bound by the plain meaning of that language." *Transparent GMU v. George Mason Univ.*, 298 Va. 222, 237 (2019) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). Additionally, "mention of a specific item in a statute implies that omitted items were not intended to be included within the scope of the statute." *Turner v. Wexler*, 244 Va. 124, 127 (1992) (finding that the statutory term "health care provider" did not include the omitted term "professional corporations"). *See also Gaines*, 71 Va. App. at 390-96 (applying rules of statutory construction to administrative regulations within the Building Code).

Here, VCC § 116.3 and VCC § 115.2 address different actions available to the Building Official. VCC § 115.2 establishes a criminal penalty after continued violations following written notice; it specifies in detail what information must be included in the notice and who must receive it. The plain language of VCC § 116.3, by contrast, contains no reference to a "notice of violation" as a condition precedent to revoking a certificate of occupancy; it merely provides that a certificate of occupancy "may be revoked" after "repeated violations." Appellant asks us to read the words "notice of" into the regulation. We decline to do so. "Rules of statutory construction prohibit adding language to or deleting language from a statute." *Appalachian Power Co. v. State Corp.*

- 7 -

*Comm'n,* 284 Va. 695, 706 (2012); *see also Office of Atty. Gen. v. State Corp. Comm'n*, 288 Va. 183, 192 (2014). Therefore, nothing in VCC § 116.3 requires the Building Official to provide a notice of violation before revoking a certificate of occupancy. Because the TRB is responsible for enforcing these regulations, we accord great weight to its interpretation that VCC § 116.3 does not require prior notice. *See Gaines*, 71 Va. App. at 390.

Appellant also contends that because the only notice of violation was issued in 2013, the TRB could not legitimately find "repeated violations" as required by VCC § 116.3.[4] However, the record reflects uncontradicted testimony that appellant constructed additions and made structural modifications to the property between 2013 and 2019, all without the required permits. The record supports the finding that these additions and construction constituted repeated violations.

### 3. Corrective Work Order

Appellant argues that not only was the Building Official required to notify appellant of the violations, he also was required to issue a corrective work order and allow a reasonable amount of time for compliance before revoking the certificate of occupancy. Appellant cites no applicable legal authority for this contention.

A corrective work order is a locally created, informational document advising a property owner of the specific actions necessary to remedy the violations. It is an administrative document prepared by Fairfax County. Issuance of a corrective work order is not mandated by the VCC, neither of which make any reference to a "corrective work order." Appellant's additional argument—that the corrective work order it ultimately received rescinded the prior revocation

---

[4] The 2013 notice is irrelevant here because it was issued for a criminal violation under VCC § 115.2 and resulted in a criminal summons that was resolved by order of *nolle prosequi*. The instant revocation of the certificate of occupancy was issued pursuant to VCC § 116.3 and is a civil matter.

notice—fails for the same reason. Nothing in VCC § 116.3 requires either a notice of violation or a corrective work order before revoking the certificate of occupancy.

### 4. Statute of Limitations

Appellant also contends that the statute of limitations precluded the Building Official from issuing the revocation notice. Appellant relies on VCC § 115.2.1 and Code § 19.2-8, neither of which applies here. Code § 19.2-8 establishes a statute of limitations for various criminal misdemeanor offenses and specifies a two-year limitation for prosecutions of criminal violations of the Building Code. However, it does not limit the civil enforcement process. *See* Code § 19.2-8.[5]

VCC § 115.2.1 limits criminal prosecution to "[two] years after the approved final inspection for an alteration or renovation." Here, no final inspection took place because all the alterations and additions were undertaken without the required permits, and therefore the two-year time frame was never triggered.

Most significantly, however, the matter before us did not arise from a criminal conviction; it is a civil administrative appeal. VCC § 116.3 differs significantly from VCC § 115.2 and provides for civil enforcement of the Building Code. Enforcement under VCC § 116.3 is not constrained by the criminal statute of limitations. Accordingly, we find that the circuit court did not err by upholding the TRB's ruling declining to apply the statute of limitations.

---

[5] Code § 19.2-8 provides as follows:

> Prosecution of Building Code violations under [Code] § 36-106 shall commence within one year of discovery of the offense by the building official, provided that such discovery occurs within two years of the date of initial occupancy or use after construction of the building or structure, or the issuance of a certificate of use and occupancy for the building or structure, whichever is later.

5. Due Process Violations

Appellant also asserts that its due process rights were violated because the Building Official declined to issue a stay of the revocation pending the TRB appeal. The standard for due process claims is a familiar one. The United States Constitution guarantees that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Lee v. City of Norfolk*, 281 Va. 423, 433 (2011) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). Appellant is correct that the Constitution generally "requires some kind of a hearing before the [s]tate deprives a person of liberty or property." *Id.* at 434 (quoting *Zinermon*, 494 U.S. at 127).

However, courts have held that due process is not violated by a failure to provide a pre-deprivation hearing when "immediate action was necessary to eliminate an emergency situation" and adequate post-deprivation process was provided. *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464, 486 (6th Cir. 2014); *see also Jordan ex rel. Jordan v. Jackson*, 15 F.3d 333, 344-45 (4th Cir. 1994) (rejecting due process challenge to statute authorizing emergency removal of children from home). In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court specified factors to be considered in determining whether a hearing was required before suspending a business license. 424 U.S. at 334-35. These factors include the private interest affected, the possibility of any additional or different safeguards, and the government's interest in the action. *Id.* at 335.

Here, although the revocation harmed appellant's business interest, the Building Official was exercising a legitimate public interest in protecting the health and safety of patrons. If appellant had been allowed to continue operating once the extensive violations of the Building Code had

come to the attention of the Building Official, it is reasonable to conclude that citizens could have been endangered. Appellant chose not to remedy the violations or pursue its request for an emergency injunction in circuit court. Appellant was ultimately afforded an administrative hearing which sufficiently protected due process rights. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993) (allowing postponement of a due process hearing until after deprivation in extraordinary situations); *see also Tri-County Paving v. Ashe*, 281 F.3d 430, 438 (4th Cir. 2002) (holding that the availability of post-deprivation procedures barred a landowner's procedural due process claim).

### 6. Illegal Search and Bad Faith

Appellant also contends that Fitzgerald, the assistant building official, conducted an illegal search of its property to obtain the evidence that she presented at the hearing and the Building Official issued the revocation notice "arbitrarily, capriciously, and in bad faith" based on "unsubstantiated community health, safety and welfare concerns." Appellant contends that on November 1, Fitzgerald "conducted a late-night, after-hours raid . . . enlisting the resources of the [f]ire [m]arshal" after she had been denied access to the property on October 24.

The record belies appellant's contention. Fitzgerald only examined areas open to the public on October 24 and was able to observe the many violations from that vantage point. When she returned to the property at 8:30 p.m. on November 1 with a fire marshal, they observed 102 people in a business that had an occupancy permit for forty-nine.

Likewise, appellant's argument that the revocation notice was issued in bad faith is without merit. The Building Official issued the notice based on substantiated violations, and the notice contained all of the requirements necessary under VCC § 116.3. It was in writing and listed the eight corrective actions necessary for reinstatement of the certificate of occupancy. *See* VCC § 116.3. Additionally, it contained a section explaining the public safety basis for the revocation.

Appellant's violations were myriad. Appellant was properly notified in writing and was advised of the eight conditions that needed to be repaired. VCC § 116.3 provides no time frame for issuing a revocation notice to a permit holder; therefore, the fact that the revocation notice was not served on appellant immediately is immaterial.

### 7. Exclusion of Evidence

Finally, appellant contends that the court erred by not reversing the TRB decision because the TRB improperly excluded inspection documents that appellant sought to introduce. Appellant requested the admission of the documents at the beginning of the hearing, and the TRB declined to include them at that time. However, it took the request under advisement and offered to review the documents when appellant testified "if necessary." Appellant never renewed its motion to admit the documents or objected to their exclusion at the TRB hearing but instead essentially abandoned the request to have the TRB consider this evidence. Appellant is therefore precluded from challenging its exclusion on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered . . . unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

This Court previously held that a coal company failed to preserve an issue under Rule 5A:18 because the company did not object to the admission of a report during a hearing before the Department of Mines, Minerals, and Energy. *See Consolidation Coal Co. v. Dep't of Mines, Mins. & Energy, Div. of Mined Land Reclamation*, 33 Va. App. 784, 791 (2000). "[A]n appellant, under the provisions of the [VAPA], may not raise issues on appeal from an administrative agency to the circuit court that it did not submit to the agency for the agency's consideration." *Id.* (first alteration in original) (quoting *Pence Holdings, Inc. v. Auto Center, Inc.*, 19 Va. App. 703, 707 (1995)). "[U]nder the VAPA, the circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court. In this sense, the General Assembly has

provided that a circuit court acts as an appellate tribunal." *Pence Holdings, Inc.*, 19 Va. App. at 707-08 (quoting *School Bd. of York v. Nicely*, 12 Va. App. 1051, 1062 (1991)). Here, because appellant essentially abandoned its request to present evidence to the TRB, the TRB could not meaningfully rule. Appellant is precluded from challenging the exclusion on appeal.

CONCLUSION

We affirm the court's decision dismissing appellant's administrative appeal because nothing in the VCC requires issuance of a notice or corrective work order before revoking a certificate of occupancy, and no statute of limitations applies. Further, we affirm the court's determination that appellant's due process rights were not violated, that no evidence was obtained by an illegal search, and that the Building Official did not revoke the certificate of occupancy in bad faith. Finally, because appellant failed to preserve any challenge to the TRB's exclusion of the inspection documents, this Court will not consider that issue on appeal. Accordingly, because the court did not err in upholding the TRB's decision to revoke appellant's certificate of occupancy, we affirm.

*Affirmed.*